## ESTATE OF CHARLES McLAUGHLIN, DECEASED.

[No. 3061; report of referee filed June 4, 1885, adopted and confirmed by the court November 24, 1885.]

Appraisers.—The Court or Judge must Appoint three disinterested persons to appraise the estate of a decedent, and the three appointees must discharge the duty imposed upon them unless they renounce the trust.

Appraisers.—The Provision of the Statute that "Any Two" of the appraisers "may act" only means that the valid action by two of the appraisers, where the third appointee refused to, or for some reason not imputable to the acting two did not act, would be a sufficient execution of the powers invested in and the duties imposed upon the three; and is intended to prevent a failure or invalidation of the whole appointment.

Appraisers—Performance of Duties.—Appraisers are Officers of the court, and, in the execution of their appointment, bound to the performance of a judicial duty, in which the creditors and heirs of the deceased, and the court, are interested and concerned. Whether or not one of the appraisers shall perform his judicial duty cannot depend upon the whim or willfulness of the executor or administrator, or the two other appraisers.

Appraisement—Validity When Made by Two Appraisers.—The legal status of an inventory and appraisement which is merely the act of two appraisers, without an opportunity given to the third appraiser to act and a failure on his part to do so, is that it is invalid, and an imposition and fraud upon the court. Therefore, in the case of appraisements returned by two appraisers only, a statement should be annexed to and form part of their report, showing the reason for the nonaction of the third appointee.

Appraisers.—Persons in the Employment of the Executrix should not be appointed appraisers.

Appraisers.—The Court Should Designate the appraisers of estates of decedents, rather than to accept nominations made by the executor.

Appraisers.—The Compensation of Appraisers is regulated and fixed by statute; the maximum allowance is $5 to each appraiser for every day's service by him, and evidence of a quantum meruit in excess of that amount is inadmissible.

Appraisers.—The Extent of an Appraiser's Duty was called in question where it appeared "he might have received memoranda as appraiser, or had access to, or knowledge of such, showing a statement of property differing from that returned in the official inventory," and it was suggested that our statute, although vague, seems to con-

vey the idea that the inventory of a decedent's estate is not necessarily made up by the executor or administrator alone, but more properly in conjunction with the appraisers.

**Appraisement—Description of Property.**—The appraisers, as well as the executor or administrator, must "give a full description" in the inventory and appraisement of every item of property belonging to and character of claim and interest in the right of decedent, and whether it be community or separate property; and "make diligent inquiry" in that regard.

**Appraisement.**—The Requirements of the Appraisers' Duties as to the Inventory and appraisement, and return thereof, set forth in detail.

**An Appraiser's Right to Compensation is Confined to the Days** actually and necessarily employed in the appraisement; constructive services or charges will not be recognized. An itemized account of each day (by specific date) employed, and the particular services thereon rendered, must be made and returned as a part of the appraiser's report; and if compensation is waived, that fact must be noted.

**Appraisers—Gratuitous Service.**—In the Appointment of Appraisers, where the circumstances merit gratuitous service, the court will appoint persons to act without charge; and the court's discretion to make such appointment may be invoked in all proper cases.

In this case the inventory and appraisement was, according to the custom of the court in probate, handed by the clerk, upon filing, to the judge, and the latter noticing that the appraisers' return showed a service of eighty-one days, whereas the bill was $4,500,—that is, $1,500 for each appraiser,—ordered that a reference be had to examine into the services performed by the appraisers, and the amount claimed by them as compensation, and appointed Timothy J. Lyons as referee. The referee fixed a time and place for proceeding with the reference and gave notice to the appraisers and all parties interested. The executrix did not appear, but her attorney addressed a letter to the referee refusing to attend, and claiming that the judge's appointment was void, as the law gave him no power to make such an order or reference of his own motion; the appraisers responded in person (their representation by attorneys was only after the coming in of the referee's report), and certain heirs at law appeared by their attorney.

The testimony developed the fact that the appraisers' bill of $4,500 for services was by special agreement with the executrix upon the claim that if the appraisers traversed every portion of the extended acreage of the country lands, it would involve a large consumption of time and unnecessary labor, and it was therefore a matter of convenience and expediency to all parties that a fixed sum be agreed upon as a reasonable compensation in the premises. (See "An Act to Establish a Tax on Collateral Inheritances," etc., approved March 23, 1893, section 12, Stats. 1893, pages 196, 197.)

It also appeared that one of the appraisers had been a clerk of the decedent, and was familiar with the various properties owned by him, and he was examined by the referee as to his knowledge as to the accuracy of the inventory.

The referee inquired fully into the proceedings of the appraisers by a detailed examination of each of them, and returned with his report a verbatim transcript of the proceedings under the reference from the stenographer's notes. The appraisers were awarded $405 each, instead of $1,500 each as charged and collected by them.

The confirmation of the report was opposed by the executrix upon the ground, inter alia, that there was no jurisdiction to order the reference; but the court sustained its jurisdiction in the premises and approved the referee's report. Afterward the court ordered published in pamphlet form that part of the report which is here reproduced.

E. P. Cole, for appraisers.

John B. Mhoon, for absent heirs, in support of report.

The REFEREE.—

### THE STATUTE AS TO APPRAISEMENTS, ETC.

The law governing . . . . all questions involving the making and return of inventories and appraisements of the estates of decedents, and the appointment, duties and compensation of appraisers in connection therewith, is found in sections 1443 to 1451, inclusive; 1469, and 1475 to 1478, inclusive, of the Code of Civil Procedure of this state. But the particular section which is decisive of the questions in

this reference is section 1444, Code of Civil Procedure, perhaps the most important of all the sections relating to appraisers and appraisements, which reads: "To make the appraisement the court, or a judge thereof, must appoint three disinterested persons (any two of whom may act), who are entitled to receive a reasonable compensation for their services, not to exceed five dollars per day, to be allowed by the court or judge. The appraisers must, with the inventory file a verified account of their services and disbursements. If any part of the estate is in any other county than that in which letters issued, appraisers thereof may be appointed, either by the court or judge having jurisdiction of the estate, or by the court or judge of such other county, on request of the court or judge having jurisdiction."

THE TWO QUESTIONS UNDER SECTION 1444, CODE OF CIVIL PROCEDURE.

The two important questions arising under this section are: 1. As to the sanction or authority given to the exercise by two of the appraisers of the powers conferred upon and vested in the required three appointees; under what circumstances it is proper and valid, and to what extent; 2. As to the official character, capacity and duty of the appraisers, and each of them; their right to compensation; upon what it rests, and by whom and how fixed and regulated.

THE PRACTICE OF TWO APPOINTEES ACTING.

As to the first question, it is and has been for years past the custom in probate practice, to more or less extent, for the executor or administrator, with or without his attorney's advice, or for the attorney himself, to select such two of the three appointed and required appraisers as may be suitable to his or their choice for the performance of the "duties imposed upon the three," leaving the third appointee wholly ignorant as to the fact of his appointment, or if the fact should come to his knowledge (and the present judge of the probate department, Hon. J. V. Coffey, has found it necessary to make a rule that the clerk give official notification of all appointments), insisting upon the legal right to

dispense with his services—to disregard the appointment. This practice is not carried on with the permission of the court or judge, but often, if not nearly always, in open and indifferent opposition to the wishes and legal judgment of the court; and further, it is not merely excused, but claimed to be justified, by the "very letter of the law."

## THE STATUTE AS TO THE POWER OF TWO OF THE APPOINTEES AND THE REASON OF IT.

The following is the "letter of the law," found in section 1444, Code of Civil Procedure, quoted above, which, as we have said, is not offered in extenuation, but confidently referred to in legal justification of the practice, to wit: "The court, or a judge thereof, must appoint three disinterested persons (any two of whom may act)." Upon this language it is substantially argued by those who pursue or countenance the practice referred to, that though the law provides that there must be three appointees, yet any two of them may choose for themselves, or permit themselves to be chosen by the parties interested, to the exclusion of the unchosen third appointee (with entire indifference as to the necessity of his knowledge or consent), as those of the appointees who shall perform "the duties imposed upon the three." It may be remarked here as worthy of note that the statute nowhere authorizes the court or judge to appoint, in any case, two appraisers in the place of three; neither does it give, nor in any manner intimate, the power or authority on the part of the court or judge to select or authorize the selection of the two appointees, who "may act" under the appointment to the three; nor has such power or authority been ever judicially claimed or assumed, nor do we believe it would be claimed to exist under the statute. Is it possible, then, that what the court or judge—the sole appointing power—cannot do or authorize, can be done by a person interested, or by any two of the appraisers? Without dilating upon it, it is undoubtedly true, as a general proposition, that where the "very letter of the law" is relied upon in opposition or indifference to the spirit and apparent intention, as well also the plain common sense of the thing, it must lead to the

evident absurdity that the result of the contention in this case brings us to, in the proposition that, although the law prescribes that the court must appoint three disinterested persons to execute an important judicial duty, yet any two of the appointees may themselves arbitrarily choose or permit themselves to be interestedly chosen to perform such duty which the law mandatorily provides that three must be disinterestedly appointed to perform. The statute, in using the language, parenthetically ("any two of whom may act"), obviously meant no more than that the valid action by two of the appraisers, where the third appointee refused to, or for some reason not imputable to the acting two did not act, would be a sufficient execution of the powers invested in and the duties imposed upon the three.

Without specifically inquiring into them, it is easily conceived that many contingencies might arise where one of the appraisers would not or could not act, and the law, with this in view, undoubtedly made the provision that such an occurrence would not cause a failure of or invalidate the whole appointment. However it is noticeable that in section 1475, Code of Civil Procedure, it is provided, with reference to the appraisement of the homestead and report thereof, that: "Any two of the appraisers concurring may discharge the duties imposed upon the three, and make the report. A dissenting report may be made by the third appraiser." It might be contended that by this section the intention of the law is shown to be that in all cases the appraisers should take the oath, and proceed to the execution of their duties, but that the agreement of two in the act of appraisement is a sufficient execution of the appointment. This contention would seem to be true, at least in the case of the appraisement of the homestead. Another thing is noticeable in the language of section 1475, just quoted, in that it provides how the appraisers "may discharge the duties imposed upon the three." The mere reading of this can leave no other impression than that this duty is imposed by the order of appointment, especially as the statute nowhere else speaks to the contrary; this view seems also in complete agreement with the language of section 1445, Code of Civil Procedure,

which provides that the appraisers take an oath "before proceeding to the execution of their duty"—a duty evidently considered as imposed by the provisions of the preceding section (1444, above quoted), prescribing the order of appointment.

This view is further in accordance with the settled principle that, where one is appointed to a position of trust, and especially so in the case of an official trust, like the appointment of appraisers, unless a renunciation is shown, the law will presume an acceptance.

Now, it cannot be questioned that appraisers are officers of the court, and in the execution of their appointment bound to the performance of a judicial duty—a duty that cannot be underestimated—in the execution of which the executor or administrator, the creditors, heirs and the court are interested and concerned. The work of the appraisers is to the court, the creditors and the heirs, the beacon light and safeguard respecting the knowledge and value of the estate. Can it be said, then, that whether or not one of the appraisers shall perform such judicial duty depends upon the whim or willfulness of the executor or administrator, or the two other of the appointees? Does the renunciation or acceptance of the official trust devolving upon this one appraiser, by the order of appointment, rest upon the decision of either or all of the parties named, without the knowledge, permission or consent of the appraiser? These questions bring their own answers— even an agent of the appraiser could not determine, or be appointed to determine, this personal trust for him.

### AUTHORITIES AS TO THE POWER OF TWO APPOINTEES.

The following authorities are submitted as decisive of the view to be taken upon this question:

In Caldwell on Arbitration (second American edition), the author says, at page 202: "If a cause be referred to three persons, and they, or any two of them, have power to make the award, it may be signed by two only, provided the third have notice of the meetings, and be not excluded by force or fraud"; citing Mackintosh v. Blythe, 1 Brod. & B. 269.

In Burton v. Knight, 2 Vern. 514 (acc. Kel. 132; and see Ives v. Metcalf, 1 Atkyns, 64), a submission was to three arbitrators, or any two of them. "The award was set aside, and it was observed by the court, upon this occasion, that where parties submitted their differences to three arbitrators, or any two of them, and one of such persons was excluded by force or fraud from the meetings held for determining the matter, that alone would be enough to vitiate the award."

Strong animadversion was also cast by the court upon the partiality apparent in permitting one party to be present at their meetings, without having given the other an opportunity to attend: Caldwell on Arbitration, pp. 209, 210. To the report of this case in second Vernon, the following note is appended at page 515: "The ground expressly taken by the Lord-keeper for confirming the decree at the rolls is: 'For that there appeared a design and fraudulent exclusion of Roger Hudson the third arbitrator, *and that thereby the other two arbitrators,* Shallet and Nash, *had assumed to themselves that power which was intrusted to all three.*' "

Particular attention is directed to the language of this case last underscored, as peculiarly applicable to the probate practice under discussion.

Without a seeming desire to quibble about words, it may be noticed that in the above quoted cases the submission to arbitration was to three persons, or any two of them; whereas, our statute respecting appraisers prescribes and the order of appointment is to three persons, not to three or any two of them—the further provision that two "may act," meaning, as we have shown above, to become effective only in a proper case, and to prevent the failure of the entire order.

#### PENAL LIABILITY IN CASE OF UNAUTHORIZED APPRAISEMENT BY TWO.

If, as shown by the above citations, in the case of a submission to arbitration by the parties themselves, an award which is the result of a practice precisely the same as that often adopted in the making and return of appraisements in probate is thereby tainted and vitiated, so as to be rendered fraudulent, is not the probate practice which we have been

considering—where the appointees are not the choice of the parties interested, but the selection of the court, and ipso facto its officers—a fraud and imposition upon the law and the court, and do not all the parties implicated in the violation of the law become liable not merely to the animadversion of the court, as they did in the cases cited—where the arbitrators were not officers of the court, but only the appointees of the parties—but to such penalties as it might consider proper?

### LEGAL STATUS OF APPRAISEMENTS BY TWO.

We conclude, then, on this head, that the legal status of an inventory and appraisement which is merely the act of two appraisers, without an opportunity given to the third appraiser to act, and a failure on his part so to do, through declination or other cause entitling the two other appraisers to proceed without him, is that it is invalid and fraudulent, and the act of the two appraisers without such sufficient cause is a willful violation of the law, and an imposition and fraud upon the court appointing them. If this view be adopted by the court, it might be advisable to make a rule respecting inventories and appraisements returned signed by two appraisers only; perhaps that in such cases a statement of the acting appraisers, subscribed by them, showing the reason for the third appraiser not acting, should be annexed to and form part of the appraisement.

### APPRAISERS MUST BE "DISINTERESTED PERSONS."

It was developed in the proceedings on the reference that two of the appraisers . . . . were at the time of their appointment, had been, and continued in the employment of the executrix individually, also that their appointment was at the suggestion and solicitation of the executrix, and the matter was called to the court's attention. There can hardly be a doubt that they were both improper persons for the office of appraiser, in view of their relationship to the executrix at the time of their appointment; even in the case of arbitration, where the interested parties themselves appoint the arbitrators, it is naturally held that no person in the em-

ployment of or pecuniarily obligated to the parties is qualified to act—even a cousin has been excluded on account of his mere kinship. . . . . This circumstance illustrates the danger of such suggestions being at all entertained by the court; and the following authoritative statement as to the New York statute, upon which our own is based, is perhaps worthy of consideration in this regard: "The surrogate has the selection of the appraisers, and the reason of the statute would seem to require that he should designate these officers in order to insure as well competency as impartiality in the discharge of their duties": Dayton on Surrogates, p. 244.

OFFICIAL CHARACTER OF APPRAISERS AND THEIR COMPENSATION.

As to the second question proposed above under section 1444, Code of Civil Procedure—the official character, capacity and duty, and the compensation of the appraisers—no difficulty can be perceived. The appraisers being appointed by the court for the performance of a judicial duty, are of course ipso facto officers of the court for that purpose; therefore their character, capacity and duty are official.

Their compensation, and how and by whom it is fixed and regulated, rest upon the following simple and plain language of said section 1444, viz.: "Who [the appraisers] are entitled to receive a reasonable compensation for their services, not to exceed five dollars per day, to be allowed by the court or judge. The appraisers must, with the inventory, file a verified account of their services and disbursements."

AUTHORITIES AS TO THIS COMPENSATION.

In the Succession of Caballero, 25 La. Ann. 646, the court of last resort of Louisiana held: "The law fixes fees of appraisers; where illegal charges are apparent on the face of the record, they can be corrected." Here the court, of its own motion, reduced the charge of $300 to $16.

In Walton v. Creditors, 3 Rob. (La.), 438, held: "A notary's fees being fixed by the law, he can under no pretense demand additional compensation." In this case the court said: "The lower court ruled that 'evidence to establish a quantum meruit is entirely misplaced in relation to

those official services for which a tariff is fixed by law.' It does not appear to us that the court erred. If the fees allowed to notaries by law for services rendered by them be insufficient, they must seek relief by an application to the legislature for a new tariff or by resigning their offices. Courts of justice cannot countenance any other mode.''

So, in Hawford v. Adler, 12 La. Ann. 241, held: ''A notary cannot increase his legal fees for official acts by evidence of a quantum meruit for extra services. A relaxation of the rule would make the fee bill a dead letter.'' (Also: Dayton on Surrogates, p. 255; McClellan's Surrogate's Court Practice, 2d ed., pp. 371, 372; North's Probate Practice (Ill.), sec. 316; Horner's Probate Law, sec. 182.)

#### CONCLUSION AS TO BASIS AND LIMIT OF COMPENSATION.

The above authorities necessitate no comment or explanation, nor does the statute itself.

We therefore conclude that the law fixes the fees of appraisers in conjunction with the allowance by the court; that the maximum allowance is $5 to each appraiser for every day's service by him; that evidence of a quantum meruit in excess of $5 per day is not admissible; and under no pretense, nor by any ingenuity whatsoever, can the law be evaded or violated.

#### APPRAISER'S DUTY IN CONNECTION WITH THE PREPARATION OF THE INVENTORY, SECTIONS 1445, 1449, CODE OF CIVIL PROCEDURE.

The extent of the appraiser's duty was called in question on the reference, it appearing that ''he might have received memoranda as appraiser, or had access to or knowledge of such, showing a statement of property differing from that returned in the official inventory.''

While our statute is not as clear as it could be, yet we believe the same idea is found in sections 1445 and 1449, as is clearly expressed in the New York statute, namely: That the inventory is not necessarily made up by the executor or administrator alone; but more properly in conjunction with the appraisers. In section 1449 it is clearly expressed that the

appraisers must sign the inventory, and that then the executor or administrator must take and attach the oath as to its correctness. This oath seems proper upon reading the section (especially in connection with section 1445) only after the inventory and appraisement have been completed; not before the appraisement has been made, as is always the practice.

## NOTE AS TO SPECIAL INSTRUCTIONS AND SPECIAL RULE OF JUDGE COFFEY AS TO APPRAISEMENTS AND APPRAISERS.

Under directions of Judge Coffey whenever appraisers are appointed by him, the clerk sends a printed notification to each appraiser, as follows:

[Title of Court and Cause.]

I am instructed by the Judge presiding in the Probate Department of the Superior Court to inform you of your appointment as Appraiser in the above estate.

Accompanying this notice is the following:

### Instructions to Appraisers.

The attention of appraisers is especially called to the provisions of the law governing them in the discharge of their duty. (Part III, Title XI, Chapter IV, Article I, Code of Civil Procedure.) The compensation of appraisers is limited to five dollars a day for each day of actual service. No "constructive" charge will be allowed. The subjoined directions should be read and pursued by appraisers:

1. Before proceeding to appraise the property take and subscribe the oath on the first page of this blank; this may be done before any officer authorized to administer oaths.

2. Set down in the inventory all money belonging to deceased; if there be none, state that fact.

3. Give a full description of all real estate and the improvements thereon, and set down the value thereof in dollars and cents in figures in the right-hand column opposite.

4. All other personal property, setting down each article separately, with the value thereof in dollars and cents in figures opposite to the articles respectively, including all debts,

partnerships and other interests, bonds, mortgages, notes and other securities for the payment of money belonging to the deceased, specifying the name of the debtor in each security, the date, the sum originally payable, the endorsements thereon (if any) with their dates, and the sums which, in the judgment of the appraisers, may be collected on each debt, interest or security.

5. Appraise the property at its actual value as near as you can, as you are sworn to do so, as the court depends on the appraisement to know the value.

6. Make diligent inquiry and find out all the property belonging to the estate, and state, as far as the same can be ascertained, what portion of the property is community property, and what portion is the separate property of the deceased.

7. Foot up the value of the several items, and set down the total at the bottom of the column in dollars and cents in figures, certify to the total value of the property, and sign the certificate at the foot of the inventory.

8. If you require pay for your services as appraisers, fill out claim on page two of this blank, sign and swear to same.

Judge Coffey has also promulgated the following as a part of his special rules in probate.

### Appointment of Appraisers.

In the matter of the appointment of appraisers, attorneys may nominate to the court for appointment one person, and no more, subject to the court's approval. In all cases where the circumstances merit gratuitous service the court will appoint competent persons to act without charge.

### Admonition to Appraisers.

*Nota Bene.*—The attention of appraisers is especially called to the provisions of the law governing them in the discharge of their duties. (Part III, Title XI, Chapter IV, Article I, Code of Civil Procedure.) The compensation of appraisers is limited to five dollars for every day *actually* and *necessarily* employed in the appraisement. No "constructive" charge will be allowed. In case no charge be made and compensation

is waived, that fact must be noted in the *return* of the appraisers: See Stats. 1893, pp. 196, 197.

In all proper cases the discretion of the court may be invoked to appoint competent appraisers to act without compensation.

### An Itemized Account by Appraisers Necessary.

The attention of appraisers is also directed especially to the necessity of making an *itemized* account of their charges and disbursements. *Day* and *date* must be given in *every* instance. Experience has taught the Court the necessity of rigorously enforcing this rule, which, although in existence for years, has been occasionally disregarded. It is enjoined, therefore, upon the appraisers appointed by the Court to preserve *data* in *detail* of their charges and *annex the same to their report.*