The opinion of the court was delivered by
Fenner, J.
This suit was brought by Charles P. Hurley, of Boston, Mass., against the Southern Express Company, the Louisiana *890 State Lottery Company, and George E. Underwood, also of Boston, this last named being made party to the suit by amended petition. The petition sets forth that Hurley is the owner of one-fifth part of ticket No. 48,807 of the Louisiana State Lottery Company for the monthly drawing of July 12, 1892, that it is entitled by said drawing to $15,000, and is in possession of the express company for collection without title, and prays for judgment of possession and ownership of said ticket against the express company and Underwood, and money judgment against the lottery company of $15,000. Upon affidavit and bond the ticket was sequestered in the hands of the express company and is in the custody of the civil sheriff of Orleans.
The express company answered that it held the ticket for collection for account of Underwood and was interested only as stakeholder.
The lottery company answered that the ownership of the ticket was in dispute and that it stood ready to pay the money to the party to whom such ownership should be finally adjudged.
Underwood answered that he received the ticket from James W. Sullivan, of Boston, its true owner, as whose agent he lodged it with the express company for collection. He prayed judgment rejecting plaintiff’s demand, and in reconvention for damages. The demand in reeonvention was withdrawn, with leave to sue for damages on the sequestration bond.
The evidence was submitted to the judge of the District Court, and judgment was rendered in favor of plaintiff.
George E. Underwood, the titular defendant, and James W. Sul- ' livan, the real defendant, prosecute this appeal.
The case presents a conflict of evidence so irreconcilable as to leave no doubt that there is a fraudulent conspiracy between one of the parties and his witnesses to rob the other of this winning lottery ticket. If Hurley and his witnesses are not lying conspirators, Sullivan and his witnesses are undoubtedly such, and vice versa. The question is which are the guilty perjurers?
The testimony of Hurley and Sullivan, and that of Fitzpatrick and Underwood, was taken in open court, and the judge saw and heard them testify. The other material testimony was taken under commission.
The judge weighed the testimony and sums up his conclusions as follows:
*891 “ James W. Sullivan and George E. Underwood contradict each other on three material facts in this case about which they could not be mistaken. Their manner upon the witness stand, the narrative they relate and the way they related it, contradicted as it is by Hurley, Donahoe and M. P. Linnehan, convince the court that their testimony is not only untrue but given in conjunction with that of Daniel J. Linnehan to carry out a conspiracy to steal the lottery ticket sued for in this case from the plaintiff, and to collect the prize payable on its presentation, and that it is, therefore, the result of fraud and collusion. The testimony of Whicher is laconic, evasive and therefore unreliable. Arthur Saucier, a waiter in the liquor saloon in which Sullivan and D. J. Linnehan work, was evidently the tool they used to steal the ticket, and his evidence is pointedly contradicted by Hurley, Donahoe and M. P. Linnehan.
The court is convinced that Charles P. Hurley told the truth on the witness stand. He is corroborated by Donahoe and Michael P. Linnehan, two disinterested witnesses, in different occupations from that pursued by plaintiff and defendant. He is corroborated by his own acts when he discovered the fraud that had been perpetrated upon him. He is corroborated by the suspicious acts and conduct of Sullivan and Underwood, Sullivan’s brother-in-law and witness. He is corroborated by the appearance and condition of the lottery tickets offered in evidence, and further, he is corroborated by all the facts proved and the circumstances surrounding the case.
The court therefore finds from the testimony that Charles P. Hurley is owner of the lottery ticket No. 43,807 sued for in this ease, having purchased it from Dan. J. Linnehan, on the 9th day of July, 1892. That it was in his possession until the afternoon of July 16, when it was obtained from him on the pretext of comparing it with the prize list, by a fraud conceived and planned by Sullivan and Daniel J. Linnehan, and carried into execution by them with the aid of Arthur Saucier, their tool, after they knew that said ticket had drawn a prize.
Without exaggerating the weight naturally and justly due to these findings of the district judge, our patient study of the voluminous testimony has only served to confirm them.
Hurley’s story may be condensed as follows: that on July 9 be bought the ticket No. 43,807 from Dan. P. Linnehan, an old friend and acquaintance; that he folded the ticket and put it in the fob *892 pocket of his trousers; that he went to New Hampshire on his annual vacation, carrying the ticket in his pocket; that he returned to Boston on Saturday, July 16; that on that afternoon, Saucier, a waiter in the saloon where D. J. Linnehan and Sullivan were employed, came to him and said that Linnehan had sent to get the ticket to compare it with the lottery list and see if it had drawn a prize; that he took the ticket out of his pocket, tore a piece of paper out of a blank book, and in the presence of M. P. Linnehan and Dona-hoe wrote on the paper the number of the ticket, 43,807, and then handed the ticket to Saucier with directions to bring it back; that on the following Monday morning he saw a list of the Louisiana Lottery drawing which had taken place on July 12, and taking out the paper on which he had inscribed the number of his ticket, discovered that it had drawn one-fifth of the capital prize, amounting to $15,-000; that he immediately went to D. J. Linnehan, at Englehart’s saloon, and demanded his ticket; that Linnehan said he had given it to Sullivan; that when-asked why he had done so, he said he had got it from Sullivan and had not paid him for it; that shortly afterward, he met Sullivan and demanded the ticket, who made denials and excuses, which need not be repeated; that he then went to the office of the lottery agent, was informed that Sullivan had presented the ticket, and was advised to telegraph and stop payment of the ticket, which was done and this suit was brought.
Now most of the facts stated by Hurley are admitted by defendant’s witnesses. They do not deny that he bought a ticket from D. J. Linnehan; that he did go to New Hampshire; that he returned on the 16th; that on that day Saucier was sent for the ticket and received it from Hurley and gave it to D. J. Linnehan; that on Monday morning Hurley called on Linnehan for his ticket, claiming that it had won the prize; and that he afterward called on Sullivan and demanded the ticket that he had got from Linnehan.
The appearance of the ticket, which is produced in the original, corroborates Hurley’s statement that it had been folded and carried in his fob-pocket for several days, and we are most unfavorably impressed with Sullivan’s statement, made after Hurley bad testified, that he (Sullivan) had folded the ticket and carried it in his fob-pocket for several days.
Hurley’s statement as to his interview with the messenger, Saucier, and particularly as to his having copied the number of the *893 ticket on a paper, is confirmed by the evidence of M. P. Linnehan and Donahoe. It is infinitely more reasonable and natural than that given by Saucier, which is, on its face, almost incredible; and, moreover, the message which he says he delivered from Linnehan is entirely different from that which Linnehan says he sent. Hurley’s taking down the number of his ticket before delivering it to this irresponsible messenger certainly accords with the commonest dictates of prudence. It is further confirmed by another undisputed and significant fact, that on Monday morning, after seeing the prize list, he knew and claimed that his ticket had won the prize. How did he know that, if he had not preserved the number of the ticket? Linnehan denies that he told Hurley that he had given the ticket to Sullivan; yet Sullivan admits that shortly afterward Hurley demanded of him the ticket which he had got from Linnehan. Why should Hurley have applied to Sullivan if Linnehan had not told him that he had given it to Sullivan?
Linnehan claims that the ticket which he sold to Hurley and received back from him was one of ten that he had taken from the ticket dealer, Whicher, and was returned to Whicher as unpaid for. But Whicher, though he testifies for defendant and tells all about tickets that he sold to Sullivan, does not say a word about having given any tickets to Linnehan or having received back any from him. Indeed, one of the most significant facts against defendant’s testimony is the entire failure to identify or account for the ticket which it is admitted was sold to Hurley and received back from hi Eh.
We agree with the district judge that Hurley’s story is in harmony with every undisputed and independent fact in the case.
On the contrary, the testimony of Sullivan and his witnesses arouses suspicion at every step.
In the first place they admit that they knew the result of the drawing on the 14th or 15th of July, and that the ticket No. 43,807 had won, and claim that it was then in Sullivan’s possession.-
If that be true there does not seem to be any adequate motive for the promptness with which the messenger was sent after Hurley’s worthless ticket immediately after his return on the 16th, or, at least, none comparable in adequacy with that which would have resulted from a knowledge that Hurley’s ticket was a winner.
In the next place it is not altogether natural that, with knowledge that Sullivan held the winning ticket on the 14th or 15th, he did not *894 approach the lottery agent until the 18th, the first business day after Hurley’s ticket was returned.
The anxiety to get the agent to cash the ticket at a discount, and the instant forwarding of the ticket by express in the name of Underwood instead of his own, are also suspicious circumstances.
It is difficult to define very accurately the reasons which produce on the mind the impression of vraisemblance or the reverse in the estimate of testimony, oral or written. We might extend our analysis and criticism of the testimony in this case and exhibit additional grounds for our concurrence with the district judge, but it would only encumber the pages of our reports without profit to any one.
It is claimed that we should not convict a party and his witnesses of criminal fraud and conspiracy without the clearest proof, but the stress of that proposition in this case is relieved by the inevitable alternative presented to us of pronouncing such a sentence upon one party or the other.
It is urged that Sullivan’s possession of the ticket affords too strong a presumption of his title to be overcome without the strongest proof; but, in this case, we consider his possession so accounted for as to be quite as consistent with Hurley’s title as with his own. His possession has no bearing on the question of title. Its only effect is to place Hurley under the necessity of becoming plaintiff, and thereby assuming the burden of proof. He has discharged this burden in a manner which convinced the judge a quo and satisfies our own minds.
An attempt is made in this court to impugn plaintiff’s right to stand in judgment on the ground that he is seeking to recover property acquired by him under a contract of sale of a lottery ticket made in Massachusetts and in violation of the law of that State. No such defence was' set up in the pleadings and no proof is made of the law of Massachusetts. Until the expiration of its charter the Louisiana Lottery Company is authorized by the Constitution and laws of the State to issue lottery tickets and dealing therein is within the protection of the law. If the law of Massachusetts is different, that should have been alleged and proved. We think, in any case, defendant would fail in such a defence under the principles laid down in Brooks vs. Martin, 2 Wallace, 80, and in Antoine vs. Smith, 40 An. 567. The transaction, even if reprobated, is complete and the results fully accomphished, and it does nob lie in the mouth of *895 one of two parties equally guilty to set up such á defence against the title of the other See also Gibson vs. Knard (Ala.), 11 So. Rep., p. 842.
Judgment affirmed.
Rehearing refused.