## SUCCESSION OF MACARTY.

Art. 71 of the constitution, which prohibits any court from making "any allowance by way of fee or compensation in any suit or proceedings, except for the payment of such fees to ministerial officers as may be established by law", does not affect the right of an attorney or counsellor to recover the value of his services in an action, or in any other legal mode in which the parties may present the claim for adjudication.

A contract made by an executor with an attorney for a certain fee as compensation in full for any professional services necessary in the settlement of the succession, whether any action be instituted by or against the succession or not, may be binding between the parties personally, and yet constitute no charge against the succession. If an executor who receives commission for his services chooses to devolve the whole labor and responsibility of the administration upon an attorney, he must pay for the services rendered by the latter; they constitute no charge against the succession.

The succession will be liable only for the value of the professional services actually rendered for its benefit.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *L. Janin*, for the appellant, cited *Dorsey* v. *Creditors*, 5 Mart. N. S. 401. 5 Mart. 416. 6 Ib. 416. 9 Ib. 365. 9 La. 284. 5 La. 46. *Denis, Grailhe*, and *Soulé, contrā*. The judgment of the court was pronounced by

EUSTIS, C. J. This is an appeal taken by the residuary legatee of the late *L. B. Macarty* from a judgment of the Fifth District Court of New Orleans, by which a charge of $3,000 to each of two attorneys employed by the testamentary executors, was allowed in the latters' account. There were two executors, and each employed his attorney. The appellant objects to the amount charged as unreasonable, and one which the succession is not bound in law to pay, and insists on its being reduced for each attorney to the sum of $1,000, which the executors have paid. A further sum of $2,000 was also paid after

SUCCESSION
OF
MACARTY.

the opposition was filed, which of course can have no effect on the merits of this controversy.

The appellant relies for a reversal of the judgment on the case of *Dorsey*, 5 Mart. N. S. 401, and several cases cited which have been since passed upon by the Supreme Court. That of *Dorsey* is so analogous to the present in its leading features, that it may be well to state it. This is the opinion of the court.

"*Martin, J.* The syndics being cited to show cause why they should not pay to the attorney of the insolvent $1,000 for his professional services in this case, as a privileged debt, out of any monies in their hands, denied that the sum was due. A gentleman of the bar deposed that, having seen and examined the proceedings, and taken into consideration the importance of the transaction and the trouble the attorney must have been at, the whole having, as it appears, been managed by him, he thought an allowance of $1,500 for his services but reasonable. Two others deposed that, the sum claimed is, in their opinion, a moderate one, according to the amount claimed and allowed for similar services. The rule was made absolute, and the syndics appealed.

" Their counsel argues in this court, that the allowance is extravagant. The attorney contends that, there is neither bill of exceptions, nor statement of facts, &c., that may enable this court to act on the merits of the case; and that there is nothing in the decision appealed from, contrary to law or evidence.

" It does not appear to us that there is any substance in the first objection of the appellee, as the testimony appears to have been reduced to writing in court. His second, and that of the appellants, will be considered together. We have recognized the right of the attorney of a ceding debtor to a remuneration out of the ceded property, to be taxed by the court, for that portion of his services which is beneficial to the creditors. *Morel* v. *Mezotiere's syndics*, 3 Mart. In that case, the legality of the demand was also contested; its quantum was not contested. It is not for all the services rendered by the attorney to the insolvent, his client, that the syndics are to be charged, but only for those from which they derived a benefit, as the filing of the petition for the cession, and the meeting of the creditors. If afterwards a contest arises, as it may, between the insolvent and the syndics, as when he claims, and they oppose, his discharge, the latter cannot be charged with the fees of their own attorney and that of the debtor's, who acts in opposition to them. As the services to be thus compensated are rendered under the eye of the court, the taxation ought to be made on its own responsibility, which ought not to be shifted from the bench on the bar, as appears to have been done in this case, in which the decision is made on the opinion of the attornies, that the charge is moderate, and but reasonable.

" In the present case, the appellee filed the petition, and obtained the order for a meeting, at which he attended his client. Afterwards, none of the creditors making any opposition, he moved for, and obtained, the homologation of the proceedings of the meeting, and the discharge of the insolvent; and made the motion for, and obtained, the allowance complained of.

" The measure of the reward of professional service, is the exertion of legal knowledge, the responsibility incurred, and the labor bestowed.

" Few, indeed, are the cases in which an attorney has less legal knowledge to exert, or labor to bestow, than in an application for a meeting of creditors. Indeed, a blank petition would answer in every case, and require only the filling up the blanks for names, places, and dates. The amount of property or debts,

active and passive, however great, does not render the responsibility incurred greater. A suit on a plain note of hand, demands more exertion of legal knowledge, and imposes a greater responsibility. It would not be, therefore, easy for a judge, even if the opinion of witnesses was to relieve him from responsibility, to come to the conclusion of the first witness, that $1500 would be but a moderate compensation for the appellee's services. In this State, the services of law officers are as liberally estimated, perhaps more so, than in any other in the Union; yet, till very lately, this sum was deemed a fair annual compensation of the attorney-general, and some of the district judges.

" A prosecution of the lightest misdemeanor demands from the attorney-general the exertion of more legal knowledge, and imposes more labor and responsibility, and consumes more time, than all the services of the attorney of an insolvent, for which the creditors are to be taxed. Yet, except in the first appointment of an attorney-general of the State, (of whom it does not behove the member of this court, who has now the honor of being its organ, to speak,) gentlemen of great merit have easily been found to fill the office; no one ever refused it, or resigned it, except on a call to another and more dignified office. Vastly different, indeed, must be the measure of compensation in the legislative and judicial departments ef this State, if the sum which is deemed by the former a fair compensation for the attention of the attorney-general to all State prosecutions, and to the call of all State officers for opinions, during one year, and for the services of a district judge during the same period, be considered by the latter, as but reasonable for the services now under consideration.

" The two other witnesses consider the demand as reasonable, according to what is claimed and allowed in similar cases. Now the allowances referred to by the gentlemen, are those made by inferior judges. When the present allowance is complained of on the score of extravagance, the appellate court cannot sanction it because decisions, equally erroneous, have taken place before, by judges *a quibus.* The judge *ad quem* cannot take the opinion of the one *a quo,* for his rule of decision.

" Leaving aside the opinion of witnesses, the judge below ought to have acted on his own responsibility, as in the case of taxing the services of referees, or the attorney of absent creditors. In the latter case, however, which is a parallel one to the present, the legislature has not left the creditors absolutely at the discretion of the judge. It has fixed the maximum of the compensation they may be taxed for. The remuneration of this gentleman is contingent, for it is payable out of a special fund alone; the part of the ceded estate coming to the absent creditors. It cannot, in any case, exceed two-and-a-half per cent, and is to be reduced to $250, if this per centage exceed that sum. Act cf 1817. Now it is not doing any injustice to the appellee to consider his and that case parallel ones. The services of the attorney of the absent creditors, demand the exertion of more legal knowledge, more labor, and impose a greater responsibility, than those for which the appellee may claim compensation. The absent creditors are to be informed of the failure; the claim of any of them, if greater than admitted by the insolvent, must be supported; that of any present creditor must be examined, and, if excessive, attempted to be reduced; and the conduct of the syndics is most to be watched.

" As, in algebra, unknown numbers must be sought by comparison of known ones, so, in law, the just decision, in cases in which the legislator is silent, must be sought in an analogy with those in which he has spoken. Thus, in taxing professional services, in cases of insolvency, when the will of the legislator is

SUCCESSION
OF
MACARTY.

expressed on any occasion, it cannot be disregarded in a similar or analagous one. After taxing, according to the statute, the services of the attorney of the absent creditors at $250, or less, a court cannot well tax those of the attorney of the insolvent, evidently requiring less exertion of legal knowledge, less labor, and imposing less responsibility, at $1000; the four-fold of the maximum. The The administration of justice in this State, has laid under some opprobrium as to the dilapidation and waste, by law charges, of the estates of the deceased and insolvent, and this tribunal ought not to refuse its interference, when, in a particular case, it is sought for relief of the injured. When, in prescribing the mode of administering those estates, the legislature strongly recommends moderation and economy, the courts ought not to run into the opposite extremes of profusion and waste. We think the District Court erred. It is, therefore, decreed that, the syndics pay the appellee out of any funds in their hands $250, with costs below, and that he pay the costs of this appeal."

Afterwards judge *Bullard*, in delivering the opinion of the court in the case of *Stein* v. *Bowman*, 9 La. 284, uses this language: "It has long been a subject of just reproach that extravagant allowances are made to counsel in relation to the administration of estates. It is an abuse which can only be corrected by courts adhering inflexibly to the rule, to graduate the fee by the value of the services rendered."

In the different cases we have had before us, in which we were called upon to apply the 71st article of the constitution, which prohibits courts from making any allowance by way of fee or compensation in any suit or proceeding, except for the payment of such fees to ministerial officers as may be established by law, we have held that provision as not affecting the right of an attorney and counsellor to recover the value of his services in an action, or in any other legal mode in which the parties may present the claim for adjudication. Where a tableau of distribution proposed *an allowance* to counsel out of the funds to be distributed, we considered the form as objectionable; but the right to compensation for professional services rendered at the instance of the proper representative of creditors, or of a succession, has never been questioned. In the case of *Rolland*, 1 An. 224, we said: "The sums proposed in the tableau to be allowed to the attorney of the estate and the attorney for the absent heirs, have been opposed. We have lately held that, since the adoption of the present constitution, courts are without authority to make allowances by way of fee or compensation, except for the payment of such fees to ministerial officers as may be established by law.

"Where an administrator needs the aid of counsel he may legally pay for those services, as for those of any other necessary agent. The propriety of such disbursements will, however, be subject to revision; and, like every other payment made on account of the succession, is liable to be questioned by the creditors, or others interested in enforcing a prudent and economicaal administration of the funds confided to his charge."

Two gentlemen of the bar have been examined as witnesses, who consider the charge of $3,000 to each of the attornies as reasonable, inasmuch as for this fee they were to superintend pre-existing suits of the deceased, and those which might incidentally occur, and were bound to give their professional services till the winding up of the affairs of the succession. In relation to the professional services attending the proceedings of the succession, the opinion of those gentlemen was founded on an examination of those proceedings, as they are presented by the record. The suits referred to in the testimony of the

witnesses are not before us, with one exception, and the record affords us no means of affixing any value to the professional services which this succession may require ; and our duty is confined to determining the value of the services of the attornies, as they have been placed before us. A record of the case of *Delassus* v. *The Executors of Macarty*, is in ovidence; and professional services were rendered at bar, by the gentlemen whose fees are the subject of this litigation in the case of an application for a prohibition. These two cases, and the conducting the mortuary proceedings, are those for which the succession are bound to pay counsel and attorney's fees.

It appears that each of the executors selected his own lawyer, and a contract was made for $3,000 each. It was understood that this fee was to be for the full compensation of the attornies in conducting and finally winding up the succession, should there be any suits or not; and that the attornies were to superintend personally the suits pending for and against the deceased.

It will be understood that we are not called upon to impugn the reasonableness of such a contract. That rests exclusively with those who made it, and it may be binding between the parties personally, and still not constitute a charge on the succession. Executors receive commissions, and in this case their compensation amounted to a large sum. If they choose to perform no duties, but to devolve the whole labor and responsibility of the administration upon attornies, we know of no reason why they should not pay them. But their neglect or choice creates no charge on the succession. We have to determine the value of the professional services for which the succession is bound, on the facts before us. If the gentlemen have been retained in any suits left undetermined by the deceased, we see no reason why the succession should not pay them for their professional services; and it is to be understood that our adjudication relates only to the matters before us, to wit: the services up to the rendition of this judgment. The executors had a right to retain counsel to superintend suits ; but we have no means of ascertaining the value of those services, and presume none of any consequence have been rendered up to the present time. As the matter is not fully before us, we will not, however, preclude the executors from hereafter establishing against the succession their claim for any amount lawfully paid for that purpose.

The contract to which we have alluded, we do not consider as in evidence, but have given our views in relation to its effect, waiving the question of its admissibility, which is received under a bill of exceptions taken by the appellant.

The responsibility of determining the amount of fees for professional services is a matter of great delicacy ; and under the rules on which our predecessors and the profession have acted for years, a court in fixing them in a case of this kind must be guided by a conscientious estimate of their value. The services in the mortuary proceedings were mere matters of routine, requiring only ordinary professional skill, and no great labor. The argument on the application of *Mrs. Lalaurie* for a prohibition, was before this court, and the case of *Delassus* required little labor or time from the counsel of the executor. We do not feel ourselves authorized to increase the amount which the residuary legatee has been willing to allow the executors for counsel and attornies' fees. The judgment appealed from must, therefore, be reversed, and limited to the amount paid by the executors, $1,000, to each attorney.

It is therefore, ordered that, the judgment of the court below be annulled and reversed ; and it is further ordered that, the provisional account and tableau

of distribution filed by the testamentary executors of *L. B. Macarty*, on the 8th of November, 1847, be amended, by allowing to each of the counsel of said executors the sum of $1,000 instead of the sum of $3,000, for professional services rendered to the estate of *L. B. Macarty* up to the rendition of this judgment. It is further ordered that any claim which the said executors may have against the estate on account of payments lawfully made by them to their counsel, for superintending suits against their testator pending and unfinished at the time of his death, be reserved; and that the appellees pay the costs of this suit in both courts.