## No. 4337.

SUCCESSION OF J. M. CABALLERO.—Oppositions of Charles Maduel, Dative Testamentary Executor, et als.

The account rendered to the heir being a copy of the one previously homologated, contradictorily with the creditors, is *prima facie* correct.

If the items thereof were exorbitant and undue, the opponents should have administered proof to overcome the presumption of correctness existing in favor of the accountant by reason of the judgment of homologation. This has not been done. Illegal charges, however apparent on the face of the record, can be corrected.

An executor can not keep in his hands the funds which, according to law, he was bound to deposit in bank, on the plea of retaining only the amount of a legacy due to him, when the testamentary diposition in his favor, by the express terms of the will, was to be discharged out of a particular fund in Havana, Island of Cuba, of which he had not the seizin. The funds in controversy in this case were not derived from that source, and ought not to have been retained and used by the executor.

The sureties of the executor not having been cited and not appearing in this suit, the judgment rendered against them was annulled on rehearing.

A PPEAL from the Second District Court, parish of Orleans.  *Duvig-neaud*, J.  *G. L. Bright*, for dative testamentary executor and appellants.  *A. Voorhies*, for Martinez et als., appellees.

WYLY, J.  In February, 1872, this court decided that Maria Dolores Felicité Caballero, wife of Joseph Maria Conte, was the legitimate daughter and sole heir at law of J. M. Caballero; annulled the will of said Caballero of date the twenty-first of March, 1852, and ratified in January, 1856, and ordered the dative testamentary executor to render a full and complete account of his administration.  F. P. Martinez, the dative testamentary executor, who had previously resigned, rendered his account, crediting the succession with $16,692, the amount of funds on hand and collected, and debiting it with charges amounting in the aggregate to $10,733 26.

To this account, Charles Maduel, the present dative executor, and Mrs. Conte, the sole heir at law, made opposition, disputing every item charged against the succession, and alleging that the said account does not contain a correct statement of the receipts and disbursements

of said executor; that the accountant never paid, or was authorized to pay, the items with which he credits himself, the same being illegal, exorbitant and undue by the succession, ought not to be charged against it; that said executor is not entitled to any commissions, because his services have resulted in nothing but injury to the estate.

The opponents further show that the said executor received $16,692, of which $2157 50 was in gold, and did not, in compliance with law, deposit said moneys in a chartered bank and keep in his official capacity a bank book, consequently he is liable and should be condemned, jointly and severally with his sureties, to pay to said estate twenty per cent. per annum interest on said amount not so deposited, from the twenty-sixth day of November, 1866, until final payment; that he has not used proper diligence in collecting certain claims due the estate, amounting in the aggregate to $17,904 55, and by his neglect and inattention he has caused the estate to lose that amount, for which he becomes liable; and that he has utterly · failed and neglected to rent a valuable residence belonging to the estate on St. Louis street, causing a loss of $1800, for which he is also liable. The court dismissed the oppositions and permitted the accountant to retain the balance of the money, for which he credited the estate, as a payment on the legacies made to him and his children by the will of Caballero. From this judgment the opponents appeal.

The account rendered to the heir being a copy of the one previously homologated, contradictorily with the creditors, is *prima facie* correct.

If the items thereof were exorbitant and undue, as alleged, the opponents should have administered proof to overcome the presumption of correctness existing in favor of the accountant by reason of the judgment of homologation. This has not been done.

There are several items of the account, however, that we can correct:

*First*—The charge of $50, reserved for future costs for the clerk; as the executor has resigned, the succession should not be charged therewith in his account.

*Second*—The item of $100, for affixing and removing seals, is illegal, the law only allowing $3 to the notary for such service. It must be reduced to the sum mentioned.

*Third*—Inventory and supplemental inventory and copies, $605; this charge should be reduced to $25; the inventories being before us, and the law fixing the fees of notaries.

*Fourth*—The item of $3000, to P. Soulé and L. Charvet for attorneys' fees, should be reduced to $500; the extent of their professional labors appearing in the transcript, and the court being authorized to determine the value of their services.

*Fifth*—The item of $1000, to Q. A. Thomas, attorney of absent heirs, should be reduced to $100.

*Sixth*—The item of $300, charged for the services of appraisers, should be reduced to $16, the amount to which they were entitled under act No. 33 of the statutes of 1870.

*Seventh*—The items due to Ferrer, Gonzales and Bances, amounting in the aggregate to $1012 70, should be stricken from the account, as the proof is they have not been paid by the accountant.

*Eighth*—The item of $1331 59, charged as the executor's commissions, should be stricken from the account. From the record before us, and in view of the illegal and exorbitant charges he has permitted to be allowed against the estate, we are satisfied that his administration has been an injury rather than a benefit to the succession. 4 An. 578.

Actually administering $16,692, this executor has presented charges amounting to some $9000, consisting almost entirely of funeral charges, attorneys' fees, his own commissions, clerks' fees, notary and appraisers' costs, and auction charges.

Instead of renting out the residence belonging to the estate, inventoried at $30,000, he permits it to lie idle, and sets up charges for a keeper amounting to $246. An executor so remiss and positively unfaithful in the discharge of his duties, deserves no remuneration for his services.

The charges, therefore, for fixing seals, inventories, attorneys' fees and appraisers' costs, should be reduced from $5005 in the aggregate to $644 in the aggregate. While the sum retained for future costs of the clerk, the executor's commissions, and the items charged as due to Ferrer, Gonzales and Bance, amounting in the aggregate to $2394 29, should be stricken from the account. $6755 29 should, therefore, be deducted from the $10,733 26 with which the executor credits himself in the account. This leaves the total charges $3977 97, which, deducted from the $16,692, funds belonging to the estate in the hands of the executor, leaves $12,714 23 due by him. This sum the executor should pay over to the opponents, with twenty per cent. per annum interest, because he failed to keep the same deposited in a chartered bank of this State, according to law. (Revised Statutes of 1870, p. 8, sec. 7.) The executor, however, contends that he was not bound to deposit this sum in bank, because under the will there was a legacy to him, in discharge of which he had the right to retain the funds in controversy. In support of this position he cites articles 1627 and 1628 of the Revised Code.

Article 1627 is not applicable, because the " thing bequeathed " was not in his possession at the opening of the succession. He acquired the funds in controversy subsequently, in his fiduciary capacity.

Article 1628 permits the testamentary executor, having seizin of the effects of the succession, to retain in his possession the amount of the legacy due him, subject to a restitution for the payment of debts.

The accountant, however, was not a testamentary executor; he was only a dative executor. Assuming, however, that he had the right accorded by article 1628, this executor could not retain the funds in controversy, because the disposition in his favor, by the express terms of the will, was to be discharged out of a particular fund in the hands of Juan A. Bance, in Havana, Cuba. The funds in controversy were not derived from that source, and ought not to have been retained and used by the executor.

As to the claims for damages against the executor, for failing to collect the several sums due the estate and for failing to rent out the residence, we will remark that the opponents have not adduced sufficient proof to fix his liability.

It is therefore ordered that the judgment appealed from be annulled, and it is now ordered that the opponents recover judgment against the accountant, F. P. Martinez, for ten thousand five hundred and fifty-six dollars and seventy-three cents, payable in currency, and the further sum of twenty-one hundred and fifty-seven dollars and fifty cents, payable in gold (the amount inventoried as belonging to the succession); and it is further ordered that there be judgment against said F. P. Martinez and his sureties, jointly and severally, for twenty per cent. per annum interest on twelve thousand seven hundred and fourteen dollars and twenty-three cents, from the twenty-sixth day of November, 1866, till paid.

It is further ordered that said Martinez pay costs of both courts.

Revised Code 1191, 1674; Revised Statutes of 1870, section 1465; Verret v. Aubert, 6 L. 353; 14 An. 707; Revised Code, Art. 1150; 6 An. 427; 9 An. 412; 12 An. 445.

## ON REHEARING.

LUDELING C. J. In the decree of this court rendered on the thirteenth of January, 1873, the securities of the executor were condemned to pay twenty per centum damages, under the penal statute of the State, because the executor had failed to deposit moneys collected by him as required by the law. R. S. p. 8, sec. 7.

Our attention was called to the fact that the securities were not parties to this suit, and for that reason we granted a rehearing.

The securities were not cited, nor have they appeared in the suit; the judgment against them in this suit was, therefore, improperly rendered. 6. N. S. 635; 3 La. 434; 9 An. 85.

It is therefore ordered that so much of the decree of this court heretofore rendered in this case, as condemns the securities of the executor to pay the damages aforesaid and costs, be annulled, and that in other respects the decree remain undisturbed.