(70 South. 522)

No. 21416.

### HUNT v. HILL.

(Nov. 29, 1915. On Application for Rehearing, Jan. 10, 1916.)

*(Syllabus by the Court.)*

EVIDENCE ☞523 — AMOUNT OF FEES—QUESTION OF LAW—EXPERT TESTIMONY.

Although the value of legal services rendered by an attorney is a matter which the judge may decide from the proceedings conducted before him or from the record of the proceedings for which a law fee is demanded, nevertheless the testimony of lawyers as experts on the value of their professional services is admissible in evidence, and must be considered by the court, with such precedents as jurisprudence has established in fixing attorney's fees.

[Ed. Note.—For other cases. see Evidence, Cent. Dig. § 2331; Dec. Dig. ☞523.]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Carleton Hunt against Mrs. Susanne Carroll Hill. From a judgment for plaintiff, defendant appeals. Modified and affirmed, and rehearing denied.

Denegre, Loovy & Chaffe, of New Orleans, for appellant. Hall, Monroe & Lemann, of New Orleans, for appellee.

O'NIELL, J. The defendant has appealed from a judgment rendered against her for $5,000, the sum claimed by the plaintiff for professional services rendered as an attorney at law. The services were rendered without an agreement as to the amount of the fee, and the only question presented on the appeal is whether the fee charged by the plaintiff and allowed by the district court is excessive. The plaintiff has been practicing law in New Orleans and elsewhere for 57 years, and has earned and enjoys a great reputation as one of the ablest and most honorable members of the profession. While he was on his vacation in Duchess county, N. Y., in the summer of 1914, he was visited by the defendant's husband, Mr. John Philip Hill, of Baltimore, Md., and consulted in regard to the last will and testament made in New York on the 27th of June, 1913, by Mrs. Hill's grandmother, Mrs. Susan Howell Carroll, who died in New York City on the 23d of May, 1914. The consultation had and advice given concerned the rights of Mrs. Hill, as the sole heir of her grandmother, to certain property on Royal street, in the city of New Orleans, known as the Sazarac property, which the testatrix had attempted to dispose of in her will to the prejudice of Mrs. Hill. Mr. Hunt advised Mr. Hill that the will contained illegal and impossible conditions, attempting to create a trust estate, contrary to public policy and to the Civil Code of Louisiana, and that, as far as the property in this state was concerned, the dispositions of the will would be considered and dealt with by the courts as not written. The plaintiff then prepared and delivered to Mr. Hill the forms of the affidavits on which to obtain an ex parte judgment of the civil district court for the parish of Orleans recognizing Mrs. Hill as the sole heir of her deceased grandmother and sending her into possession as owner of the Sazarac property. Mr. Hill had the affi-

davits signed, and forwarded them, with an exemplified copy of the testament of the deceased Mrs. Carroll, to Mr. Hunt in New Orleans, according to the latter's request. In the meantime Mr. Hunt returned to New Orleans; and, on receipt of the affidavits, he prepared and presented to the civil district court a petition in the name and as attorney of Mrs. Hill, alleging the death of her grandmother, and praying that an inventory and appraisement be made of the property of the succession situated in New Orleans. The court ordered that the inventory be made, and the Sazarac property, the only property belonging to the succession in this state, was appraised at $70,000. Thereupon Mr. Hunt, as attorney for Mrs. Hill, presented another petition to the civil district court, to which he attached the exemplified copy of the last will and testament of Mrs. Carroll, and alleged that the instrument was null and void and of no effect quoad the property situated in New Orleans, because:

"If applied to said real estate, it would affect the transmission thereof upon impossible conditions by making it a part of and merging it into a trust estate contrary to public policy and the civil law of the state of Louisiana as established in the Civil Code of the state and as maintained by the jurisprudence of the Supreme Court expounding and enforcing the same."

He prayed that the dispositions of the will concerning the Sazarac property be considered not written, and the plaintiff sent into possession as owner thereof as the sole heir of her deceased grandmother. On the depositions and documentary evidence submitted, the court rendered an ex parte judgment, ignoring the testamentary dispositions, recognizing Mrs. Hill to be the sole surviving descendant and only forced heir of her grandmother, Susan Howell Carroll, and, as such, sending her into possession as sole owner of the Sazarac property, described accurately in the judgment. Mr. Hunt, as attorney for Mrs. Hill, then served copies or notice of the judgment upon the tenant in possession of the premises and upon the bank where the rent was deposited, and Mrs. Hill has had no difficulty in collecting the revenues.

Considering his services at an end, Mr. Hunt sent a bill for his fee of $5,000 to the husband of his client, the amount of which was disputed, and this suit followed.

Five of the most ethical and learned members of the bar, having many years of experience in matters of successions and probate proceedings, have added their testimony to that of the plaintiff that the fee charged is a fair and reasonable one for the responsibility incurred, the skillful work done, and results accomplished.

The defendant's counsel objected to the introduction of the testimony of the lawyers as experts on the value of legal services, contending that it is the exclusive province of the court to estimate the value of lawyers' fees from the evidence of the nature and extent of the services rendered and results accomplished.

Our examination of the jurisprudence does not disclose that this court has ever ruled directly on the question of the admissibility of the testimony of lawyers as experts in fixing the fees of attorneys for services rendered in proceedings conducted before the courts.

In the case of Dorsey v. His Creditors, 5 Mart. (N. S.) 399, however, it was said, in effect, that the testimony of lawyers as experts was immaterial in estimating the value of legal services, viz.:

"As the services to be thus compensated are rendered under the eye of the court, the taxation ought to be made on its own responsibility, which ought not to be shifted from the bench on the bar, as it appears to have been done in this case, in which the decision is made on the opinion of attorneys that the charge is moderate, and but reasonable. * * *
"Leaving aside the opinion of witnesses, the judge below ought to have acted on his own responsibility, as in the case of taxing the services of referees, or the attorney of absent creditors."

And in Succession of Mager, 12 Rob. 413, the doctrine was repeated thus:

"In determining the compensation to be allowed to an attorney appointed to represent the absent heirs of a succession, the court should not be governed by the opinion of other members of the profession as to the amount. It should exercise its own judgment, and the allowance should be made with reference to the labor, skill, and care required, and to the value of the estate."

The opinion last quoted was adopted and quoted in full in the Succession of Macarty, 3 La. Ann. 518.

In Uzee v. Biron, 6 La. Ann. 565, the attorney employed by the surviving widow issued execution on the judgment homologating her account (on which appeared his fee of $600) to collect the unpaid balance of $400; and she enjoined the execution on the ground that the judgment was null under article 71 of the Constitution of 1845, providing:

"No court or judge shall make any allowance by way of fee or compensation, in any suit or proceedings, except for the payment of such fees to ministerial officers as may be established by law."

The court held that the allowance, by the judgment in the mortuary proceedings, of compensation not paid, but to be paid, was prohibited by the Constitution. But, apparently without any expert testimony on the subject, the court affirmed the judgment of the district court, limiting the allowance to the fee of $200 paid before the judgment of homologation was rendered, viz.:

"As to the value of the defendant's services we concur with the district judge that the $200 paid was a reasonable compensation. The deceased left an estate of about $10,000."

In the Succession of Caballero, 25 La. Ann. 646, it was held that a judgment homologating a provisional account of an executor was not conclusive as to the fee allowed the attorneys for the executor; and on the heir's opposition to the executor's final account, apparently without the benefit of expert testimony, this court reduced the attorneys' fee, saying:

"The account rendered to the heir being a copy of the one previously homologated, contradictorily with the creditors, is prima facie correct. If the items thereof were exorbitant and undue, as alleged, the opponents should have administered proof to overcome the presumption of correctness existing in favor of the accountant by reason of the judgment of homologation. This has not been done.

"There are several items of the account, however, that we can correct. * * * The item of $3,000 to P. Soule and L. Charvet for attorneys' fees should be reduced to $500; the extent of their professional labors appearing in the transcript, and the court being authorized to determine the value of their services."

In Randolph, Singleton & Browne v. Carroll, 27 La. Ann. 467, a suit by a law firm to recover a fee for professional services rendered the defendant, the court came very near modifying the rule which had theretofore held that the opinions of lawyers as expert witnesses were entirely irrelevant, viz.:

"It is a rule long settled by this court that it will not be implicitly governed in regard to questions relating to the value of professional services rendered by attorneys at law to their clients by the opinions of legal men taken in evidence, but will be guided by a conscientious estimate of the value of the services performed, and will, of itself, fix the amount, without reference to the opinions of witnesses."

And in the Succession of Rabasse, 51 La. Ann. 590, 25 South. 326, the doctrine of the foregoing cases was repeated thus:

"Jurisprudence has settled the rule, and consecrated it, that the quantum of attorney's fees in a case where the services have been performed in the presence of the court which is called upon to decide the question is a matter of law, rather than one of fact, and which the court will value as its opinion may dictate, rather than base its judgment upon the opinion of witnesses."

The appellee calls our attention to the expression in State ex rel. Abraham v. Judges, 45 La. Ann. 889, 13 South. 2, that, without any evidence whatever in support of the demand for attorneys' fees, and without an attempt on the part of the district judge to put a value on the services, the appellate court cannot be called upon to render a judgment for fees. In that case, however, the plaintiff was not the attorney who had ren-

dered the service, and there was no evidence that he had paid or incurred a liability for attorney's fees. This may also be said of the case of Gathe v. Broussard, 49 La. Ann. 312, 21 South. 839, where it was said:

"It is true that, when testimony has been taken on that subject, courts are not only authorized, but it is their duty, to bring to bear their knowledge of the value of the services of counsel from an examination of the record in which they were rendered, but they will not and should not, where no evidence at all has been taken, attempt to fix such value, even by consent and request of the litigants."

The court did not mean, nor say, in the two decisions last quoted, that it could not, without expert testimony, put a value on the legal services rendered by an attorney, with the evidence before it of the nature and extent of the services rendered. And that is our analysis of the decision in Swain v. Webre, 106 La. 161, 30 South. 331. The plaintiff was not the attorney who had rendered the services, and he offered no proof whatever that he had paid or incurred the liability. These decisions are distinguished from those in which damages were claimed in a reconventional demand for attorney's fees for dissolving an illegal conservatory writ, as in the cases of Lemeunier v. McClearley, 41 La. Ann. 412, 6 South. 338, and Hanson Lumber Co. v. Mestayer, 130 La. 688, 58 South. 511, where it was held that the dissolution of the conservatory writ was prima facie evidence that the defendant had sustained damages; but in both cases the court refused to allow damages for attorney's fees because it was not possible to separate the value of the services rendered in dissolving the writ from the value of the same services rendered in defending the suit on the merits. These decisions can all be reconciled with the decision in Whitney-Central National Bank v. Sinnot et al., 136 La. 95, 66 South. 551, where we refused to estimate the attorney's fees for dissolving a writ of injunction, in the absence of an allegation or proof that the defendants had paid any attorney's fees or that they had incurred an obligation to pay them, as in the case of Meaux v. Pittman, 35 La. Ann. 361.

Our conclusion is that the testimony of the lawyers as experts in this case was admissible and is entitled to our consideration, along with our own opinion based upon precedents, in determining the value of the services rendered by the plaintiff. The latest expression applicable to the question of admissibility of such testimony is a quotation in Bank v. Sinnot, supra, from a former decision, to the effect that, in estimating attorney's fees, the court must exercise its own judgment, guided, but not controlled, by the expert testimony of lawyers; or, as was said in Dinkelspiel & Hart v. Pons, 119 La. 236, 43 South. 1018, expert opinion in such cases is a guide, but is not necessarily controlling on the court.

The fact that Mrs. Carroll left a will is not an important factor in fixing the plaintiff's fee for obtaining the ex parte judgment recognizing the defendant as her sole heir and sending her into possession of the Sazarac property, because, if the dispositions of the will are not, as the plaintiff says, null and to be considered not written in so far as the property in Louisiana is concerned, the will is still subject to probate and execution in this state.

However, in addition to the simple proceedings whereby the defendant was recognized as the sole heir of her deceased grandmother and sent into possession as owner of the Sazarac property, the plaintiff gave his advice that the complicated dispositions of the will could have no effect in Louisiana, and advised the defendant's husband how to proceed in this state, for which he is entitled to a reasonable fee.

The plaintiff introduced, over the objection of the defendant's counsel, the testimony of two experts on property values in New Or-

leans, that, in their opinion, the Sazarac property was worth $120,000. The plaintiff, however, was present at the making of the inventory wherein this property was appraised at $70,000, and he gave his approval by signing the procès verbal. In the absence of any suggestion that the appraisement made by the experts appointed by the court and sworn for that purpose was not a conscientious appraisement, and considering that the annual net revenue, from which some deduction must be made for deterioration and repairs, is only $6,000, our opinion is that this property was appraised high enough, as an investment, at $70,000. At any rate, we shall follow precedents and accept the appraised value stated in the inventory as correct, in considering the responsibility as a factor in fixing the attorney's fee.

The only guide we have, besides the opinion of the experts, for fixing the plaintiff's fee in this case, is such as our jurisprudence has established, although, as was said in the Succession of Filhiol, 123 La. 497, 49 South. 138:

"The amount allowed as attorney's fees in one case does not, as a rule, throw much light upon the question of what should be allowed in another."

The appellee refers us to the case of Standard Cotton Oil Co. v. Excelsior Refining Co., 108 La. 74, 32 South. 221, where the attorneys were allowed a fee of 10 per cent. on the amount to be distributed, and he cites the Succession of Filhiol, 123 La. 497, 49 South. 138, where, as he says, this court increased the fee of $9,000 allowed the attorneys by the district court to $17,000.

The case of the Standard Cotton Oil Co. v. Excelsior Refining Co. was a receivership proceeding, in which the assets were only $9,219.30; and in allowing the four attorneys—that is, a firm of three and one individual—a fee of $921.93, it was said:

"Valuable services were rendered by eminent counsel, involving much labor and time."

The allowance of 10 per cent. on so small a basis, under the circumstances of that case, is not a precedent for fixing a rate in the present case.

In the Succession of Filhiol the inventories of 13 plantations situated in several parishes and all kinds of personal property amounted to $341,014.84, to which was added subsequent collections made by the executrix, bringing the actual assets of the estate up to $402,578.91. The two attorneys unsuccessfully defended the will in a contest lasting nearly two years, during which time one of them attended, not only to the many other legal affairs, but also to the business management of the estate.

The allowance to the attorneys was, "for defending the will," said this court, "a fee of $5,000, to be divided between them." The additional allowance of $12,000 to one of the attorneys was said to be his compensation, not merely for the other legal services rendered to the succession during a period of nearly two years, but also for his attention to its business affairs.

The fees allowed both attorneys for all the services rendered, however, was a little less than 5 per cent. of the value on the inventory, and not much more than 4 per cent. of the amount actually administered.

In the Succession of Mager, 12 Rob. 413, the district court allowed the attorney for absent heirs $1,500 on the testimony of three members of the bar, who "based their opinion on the large amount going to the absent heirs, the magnitude of the estate," etc. Reducing the allowance to half of that sum, this court said:

"Upon the whole, exercising our judgment on the labor, skill, and care, which were required of the appellee, and the value of the estate, which was very large, we have concluded that the sum of $750 only ought to have been allowed."

In Uzee v. Biron, referred to above, a fee of only $200, or 2 per cent. on an estate of $10,000, was allowed the attorney who opened the succession on behalf of the widow and minor child and attended to the administration of the estate and the filing and homologation of the final account of the administratrix.

In the Succession of Caballero, 25 La. Ann. 647, on an inventory of $16,692, this court allowed a fee of only $500; that is, less than 3 per cent.—to the two attorneys of the executor who had defended the will unsuccessfully in the trial court and on appeal, and thereafter prepared and filed the final account of the executor and tried several oppositions to it.

In the Succession of Harris, 29 La. Ann. 743, the attorney for the executor of an estate inventoried at $5,816.20 provoked a sale of the real and personal property, and prepared and filed the final account, several items on which were contested in the parish court and before this court. He charged a fee of 10 per cent., which the parish judge reduced to 5 per cent.—that is, $290.81—of which this court said:

"Considering the size of the estate and the value of the services required for its proper management, we consider a usual and proper allowance."

In State ex rel. St. Amand v. Bank of Commerce, 49 La. Ann. 1060, 22 South. 207, where the attorneys demanded a fee of $12,500, and the district court allowed $5,000, the funds disbursed amounted to about twice the value of the property involved in this estate. The two liquidating commissioners were allowed only $1,000 each. The three eminent lawyers, a firm of two and one individual, were engaged three months in consultations and in the prosecution of several suits and the defense of others. They were the appellants, and, as the opponents did not answer their appeal, it was observed that this court had no authority to reduce the allowance, the only question being whether the fee should be increased or the allowance affirmed. But the court said of the fee allowed by the district judge:

"In our opinion, he made a full and very liberal allowance to commissioners and lawyers for the work performed, under the circumstances stated, and more than we should allow if the allowance was open to review."

In the Succession of Rabasse, 51 La. Ann. 603, 25 South. 326, the attorneys claimed, and were allowed by the district court, a fee of $11,421.03—that is, 10 per cent.—$5,000 of which had been allowed on a provisional account without opposition. On appeal the additional allowance of $6,421.63 was reduced to $1,000, allowing only $6,000, not much more than 5 per cent., in all. Observing that numerous suits, involving claims aggregating $66,800 against the succession, had been successfully defended, it was said:

"These suits and various other matters of litigation brought this succession before this court several times; and its records attest the labor, skill, and learning with which the attorney for the executor and other counsel who co-operated with him successfully protected the estate from spoliation, and hence we are able to judge from our own standpoint of observation of the value of these services."

In the suit of the law firm of Dinkelspiel & Hart v. Pons, 119 La. 236, 43 South. 1018, the plaintiffs claimed $3,705 for 32 items of legal services rendered the defendant; and they were allowed $1,700 by the district court. On the appeal of the defendant it was said that the allowance was not manifestly insufficient or excessive, and, as there was no good reason for amending the judgment, it was affirmed. The report of the case does not disclose the nature of the services rendered.

In the Succession of Delano, 125 La. 869, 51 South. 1019, the attorney for the executor had the will probated, conducted an administration of the estate appraised at $40,797.51, and attended to the delivery of four special legacies of real estate and one of personal property. He charged a fee of $2,000—that is, less than 5 per cent.—and consented that

the district court reduce it to $1,500. On appeal the allowance being only about 3½ per cent., the judgment was affirmed.

It appears from the foregoing review of our jurisprudence that the attorney's fees allowed in succession matters have ranged from 2 to 5 per cent. of the amount of the inventory. A fee as great as 10 per cent. was allowed in only one of the cases to which we are referred. That was in a receivership proceeding, where the fees of the attorneys of the receiver amounted to only $921.93. In only one of the successions to which we have been referred did the attorney's fee exceed 5 per cent. That was in the Succession of Rabasse, involving much litigation and several appeals to this court; and a fee of $6,000—not quite 5¼ per cent.—was allowed.

The services rendered by the plaintiff in this case did not require much time, and the responsibility assumed and results accomplished were not extraordinary. Our conclusion is that 5 per cent. of the appraisement of the property involved should be adequate compensation for the advice given and skillful and expeditious services rendered. This is more than we would consider reasonable if we had not the benefit of the opinion of the six eminent lawyers who testified as experts in this case and the district judge's approval of their estimate.

For the reasons assigned, it is ordered and decreed that the amount of the judgment appealed from be, and it is, reduced from $5,000 to $3,500; and, as thus amended, the judgment is affirmed at the cost of the appellee.

MONROE, C. J., takes no part.

### On Application for Rehearing.

PER CURIAM. By the concluding clause of the foregoing decree, "as thus amended, the judgment is affirmed at the cost of the appellee," was meant that the amendment and affirmance of the judgment in this court was at the cost of the appellee; that is, that he should pay only the costs of the appeal. The judgment appealed from had condemned the defendant, appellant, to pay the costs of the civil district court; and in that respect the judgment was not amended. However, to avoid any ambiguity:

It is ordered that our original decree be amended so as to condemn the plaintiff, appellee, to pay only the costs of appeal, and the defendant, appellant, to pay the costs of the civil district court. The application for rehearing is denied.