HAMITER, Justice.
 

 Touro Infirmary, the residuary legatee of decedent, Emanuel Leopold Weil, has appealed suspensively from a judgment awarding to Leopold Stahl -a fee of $15,-000 for legal services rendered as attorney for the executor in Weil’s succession proceedings. In an answer to the appeal, Stahl asks for an increase of the judgment to $20,000, the amount for which he was placed on the final account by the executor ; and he also prays for 5% per annum interest thereon from September 10, 1942, the date of the filing of the account.
 

 Weil, who was a resident of New Orleans, a widower, and a person survived by neither ascendants nor descendants, died on April 21, 1942, leaving a last will and testament, together with a codicil, in olographic form. His estate, having an appraised value of $371,317.99 and being entirely solvent, consisted of 93 personal and mortgage notes (constituting approximately one-half of the assets), 22 pieces of real estate, various stocks and bonds, $8,195.58 in cash, some life insurance policies, and
 
 *217
 
 certain residence and office furniture and effects.
 

 In his will the testator provided for certain particular legacies of money, totaling $38,000, and for a disposition of the furniture and effects in his apartment. Also he declared:
 

 “I appoint my grand nephew, Moise S. Steeg, Jr., Attorney of this City, as Executor of this my last will and testament without bond and with seizin — -further as an extra portion give to him all my law books, furniture and effects in my office when I pass on.
 

 “Request that my life long friend and co-laborer, Joseph Lautenschlaeger, be appointed by the Court to take the Inventory of my estate; in event he is not living when this will is probated, then said task to go to Leopold Stahl, Attorney and Notary who studied in my office.”
 

 And further the testator directed:
 

 “Balance of my estate is to be given to Touro Infirmary of this City, the funds to be used in the erection of a Memorial Pavilion for use of convalescent patients; said pavilion or building to bear in perpetuity the full names of my wife and self (Clarice Romer Weil and Emanuel Leopold Weil, Convalescent Pavilion.)”
 

 At the time of Weil’s death, the designated executor, Moise S. Steeg, Jr., was in the armed forces of the United States, being stationed at Keesler Field, Mississippi, approximately 90 miles from New Orleans. He attended the funeral, a leave of three days from his military duties having been obtained; and on the following day, April 23, 1942, he, joined by Leopold Stahl whom he had selected as his legal counsel, presented the will and codicil to the Civil District Court of Orleans Parish for probate.
 

 The court ordered the will registered and executed, confirmed Steeg as executor, and appointed Lester Lautenschlaeger, a son of Joseph Lautenschlaeger, to take the inventory in Orleans Parish; the father, named in the will to perform that act, was then ill.
 

 On April 24, 1942, Steeg executed a general power of attorney in which he named and constituted Stahl (previously selected as his attorney at law) as his agent and attorney in fact “to carry on, negotiate, and otherwise administer any and all business pertaining to the Succession of Emanuel Leopold Weil * *
 

 Then Steeg returned to his military station; however, on at least one day in each week during the next eight weeks, while stationed at Keesler Field, he visited New Orleans for the purpose of conferring with Stahl and others regarding the succession. Later, on being sent to Miami Beach, Florida, his communications with Stahl were by means of telephone, telegrams and letters.
 

 Following the execution of the power of attorney, Stahl proceeded with the administration of the estate, functioning both as attorney at law and as agent and attorney in fact for the testamentary executor, Steeg. Some. of the acts performed by him, while occupying that dual role, were legal in character; others were purely administrative.
 

 
 *219
 
 The court services rendered by Stahl, in addition to his having the will and codicil probated and petitioning for the taking and homologating of inventories in three parishes, consisted almost entirely in his obtaining orders relating to matters over which there were no contests. Among these were orders granting authority to continue the maintenance and operation of decedent’s office for the purpose of collecting rent; to obtain entry in the bank box of decedent; to pay city and state taxes; to sell some stocks, bonds and notes at private sale; to pay a certain uncontested debt; to deliver furniture in accordance with the provisions of the will; to relinquish to the rightful owners some notes and securities possessed by decedent; to pay the inheritance tax on special legacies; to enter into leases for the rental of real estate; to make and pay for repairs on residences and office; to open a bank account in the name of the succession; and to file the first and final account.
 

 The only litigation in the succession, other than that now before us, was with reference to a claim of Dr. Samuel Stern-berg for medical services performed. That physician, having been placed on the final account for $250, filed an opposition claiming $2,034. The court, following a hearing that lasted approximately two and one-half hours, allowed the sum of $2,000. There was no appeal from the ruling.
 

 As to most of the numerous acts performed by Stahl out of court, disagreement exists between counsel for the respective litigants on the question of whether they constituted legal services for the succession or were services rendered as attorney in fact for the executor. Included in those acts were the collection by him of some 90 mortgage notes (receiving interest, partial, and full payments numbering about 264), after having written form letters to the debtors informing them of Weil’s death and requesting settlements; his entering of those payments on decedent’s books; his preparing of leases for the renting of fifteen dwellings, this consisting in each instance of inserting in the blank spaces of the usual printed lease form the name of the lessor and lessee, the location of the premises and the purpose for which they were rented, the term of the lease, and the monthly rental; his holding of many consultations, and conferences, especially some with the executor and with officials of Touro Infirmary; his filing of proofs of death, and! collecting benefits under insurance policies; his paying of particular legacies and receiving receipts therefor; his settling of inheritance tax claims; his transferring of bank accounts; his attending the inventory’s taking in Orleans Parish; his making of a detailed check of the real estate of decedent; his delivery of notes to. certain persons who owned them; his conferring with tax authorities regarding 1941 federal estate tax returns and state income tax returns of decedent; his settling of a repair bill; and his payment of city, state and federal taxes.
 

 Touro Infirmary, while opposing the fee claimed by Stahl of $20,000, as well as. that of $15,000 allowed by the district court, has expressed a willingness to allow a fee of $9,332.95; this figure is cal
 
 *221
 
 culated on the gross estate value of $371,-317.99 in accordance with the administration of succession schedule of the Minimum Fee Bill of the New Orleans Bar Association. The schedule provides for a fee of 3% on amounts up to $10,000 and 2%% beginning at $10,000 and in excess thereof. Relating to such schedule is a special provision which recites:
 

 “When an administration of an estate is perfunctory and where the heirs are sent into possession without the filing of an account, this shall be treated as a putting in possession, insofar as the Minimum Fee Bill is concerned.”
 

 The putting in possession (without administration) schedule is:
 

 Minimum fee in any case $50.00
 

 Up to $10,000.00 2i/2%
 

 Beginning at $10,000.00 and up to $25,000.00 2%
 

 Beginning at $25,000.00 and up to $50,000.00
 
 1%%
 

 Beginning at $50,000.00 and in excess thereof 1%.
 

 In support of its contention that the claim of Stahl is excessive and that payment based upon the mentioned Minimum Fee Bill schedule would be both adequate and liberal, Tuoro Infirmary offered the testimony of a member of the New Orleans Bar. Stahl countered by producing as witnesses two other members of that Bar who testified that in their opinion the claimed fee of $20,000 is justified by the services rendered and is proper.
 

 In fixing the fee of an attorney the court will consider and weigh the testimony of other attorneys- respecting the value of the services rendered; but such evidence is not necessarily controlling or binding on the court. Randolph, Singleton and Browne v. Carroll, 27 La.Ann. 467; State ex rel. St. Amand v. Bank of Commerce, 49 La.Ann. 1060, 22 So. 207; Succession of Rabasse, 51 La.Ann. 590, 25 So. 326; Dinkelspiel & Hart v. Pons, 119 La. 236, 43 So. 1018; Hunt v. Hill, 138 La. 583, 70 So. 522; Succession of Williams, 156 La. 704, 101 So. 113; Peltier v. Thibodaux, 175 La. 1026, 144 So. 903.
 

 Also having a persuasive effect on and lending assistance to the court in determining the fee to be charged, but in no manner binding on it, is the Minimum Fee Bill of the New Orleans Bar Association. As the district judge well and correctly commented about that document in his written opinion, “It means that no lawyer who is a member of the Association shall charge a fee lower than that fixed by the Association. It was passed to prevent unfair competition among lawyers, and to hold them to an ethical line of conduct, and to dignify the profession.”
 

 The amount to be allowed as attorneys fees in the administration of--a succession depends upon the particular -or peculiar facts and circumstances of each case. That which has been fixed in one controversy, predicated upon the various factors- existing therein, cannot serve as precedent for a decision in another which involves, as in most instances, a dissimilar factual situation. Succession of Filhiol, 123 La. 497, 49 So. 138; Hunt v. Hill, supra; Peltier v. Thibodaux, supra; and Succession of Vatter, 192 La. 657, 188 So.
 
 *223
 
 732. But applicable to all cases of this character is the rule, established by previous decisions of this court, that in estimating the value of the attorney’s services consideration is to be given to the responsibility incurred, the extent and character of the labor performed, the importance of the questions presented, the amount involved, and the legal knowledge and ability of counsel. Succession of Percival, 138 La. 543, 70 So. 505; and Hunt v. Hill, Succession of Williams and Peltier v. Thibodaux, all supra.
 

 That Stahl is an attorney possessing considerable legal knowledge and ability is neither questioned by opponent nor disputed by the record. However, the evidence adduced in the trial of Touro Infirmary’s opposition, we having studied and tested it in the light of the other mentioned elements required to be considered, furnishes to us the firm conviction that the fee claimed of $20,000, as well as that of $15,000 allowed by the district court, is excessive; that one of $10,000 is adequate and appropriate compensation for the services performed.
 

 Undoubtedly Stahl gave much of his time, during a period of about five and one-half months, to the administration of the succession; but his efforts were directed primarily to .the handling of routine matters, acting both as attorney at law and as attorney in fact for the executor. One of the two attorneys who testified in behalf of Stahl’s claim said, under cross examination, that “this case was a case which involved and raised no novel or very difficult questions of law, but which raised mostly matters of routine, and it is only the volume of the routine which led me to testify as I did as to the amount of the fee.”
 

 Of his numerous court appearances, only one concerned a litigated matter (the claim of Dr. Sternberg), the trial of which consumed about two and one-half hours; all of the other appearances related to his obtaining the various unopposed orders above described. In none was unusual professional skill or a great amount of labor required.
 

 The legal services rendered out of court were, as we appreciate the evidence, with reference to succession items that required the exertion of only ordinary legal knowledge and imposed upon the attorney an ordinary amount of responsibility. No really important questions were presented by them.
 

 Our attention is directed to the large proportion of time given by Stahl in collecting the mortgage notes, of which there were more than 90 in number and which comprised almost one-half of the estate. Then his counsel argues that it is quite customary for an attorney to handle the collection of mortgage notes, and, further, that “the imputation of payments on account of mortgage notes is particularly within the province of a lawyer because of questions involving allocation of proper credits under the terms .of the mortgage contract and because of questions of prescription that may arise.” It seems to us that Stahl, in handling the collections in this succession, was discharging duties of the executor and acting merely in the capacity of attorney in fact or agent for
 
 *225
 
 that officer. There were no foreclosures, no examining of titles, or no other proceedings requiring legal services; only an administrative function was thereby being performed, the same as is performed daily by business men who lend money.
 

 The same may be said of the efforts of Stahl in the preparation of fifteen leases affecting decedent’s real estate. It is true, as counsel points out, that ordinarily “the matter of drawing leases is a legal function and performed countless times every day in the year by lawyers both here and elsewhere.” But in the drafting of the lease instruments in the instant matter no special skill or legal knowledge was required. All were on printed forms, as above shown, and their preparation consisted merely of the insertion by typewriter of certain necessary information. Except for these insertions all leases were identical.
 

 The executor will receive in this succession, as shown by the final account, the sizable fee of $10,000 (there is no opposition to it); and since he assigned to Stahl the responsibility of discharging his duties we know of no reason, to use the language found in Succession of Macarty, 3 La.Ann. 517, why he should not pay, out of that fee, for the assistance that Stahl gave him. Certainly it is not just to compel the succession to pay twice for those services.
 

 The fee claimed by Stahl figures about 5.38% of the estate’s value. In support of it, his counsel cites numerous cases wherein more or slightly less than that percentage of the inventory appraisement was allowed as attorney’s fees. These are Succession of Henry, 45 La.Ann. 156, 12 So. 365; Maloney v. Schulingkamp et al., 151 La. 497, 91 So. 852; Succession of Williams, supra; Succession of Herdman, 161 La. 762, 109 So. 482; Succession of Roque, 176 La. 711, 146 So. 477; Succession of Wood, 186 La. 181, 171 So. 843. As has been shown, prior cases establish no precedent and are not controlling on this court in dealing with the matter of fixing attorneys fees. However, we have carefully examined the cited authorities and find that they can be clearly distinguished from the instant controversy. All except one concerned estates considerably less in value than that under administration here; and in most of them, unlike the cause presently before us, the successions were unusually involved and attended with much litigation. It is quite proper that in a small involved estate the percentage allowed as attorney’s fees should be higher than that in a large and relatively simple one; the reason for this is that usually as much time and effort are consumed in settling the former as are required in the latter. The excepted case, Succession of Herdman, concerned an estate valued at more than $450,000; it was under administration for about eight years, much litigation was present, and the attorney was required to perform extraordinary services because the heirs lived in foreign countries.
 

 The case of In re Interstate Trust & Banking Co., 204 La. 323, 15 So.2d 369, recently decided, is also relied on by Stahl. Clearly it does not support his claim. The bank liquidation, being highly involved
 
 *227
 
 and furnishing a large amount of litigation, lasted some seven and one-half years, not five and one-half months as did this administration; and the attorneys devoted practically all of their time to the proceedings during a period of several years.
 

 More nearly like this estate were those contained in Peltier v. Thibodaux and Succession of Vatter, both siipra. In the Peltier case the estate was appraised at $426,000 and was under administration for a period of about two months; the attorney was allowed a fee of $9,500, or 2%% of the appraised value. The Vatter succession involved assets worth $379,708.19, its administration was routine in character, and no serious litigation arose therein; the executor’s attorney was granted $10,000 for his services.
 

 Lastly, Attorney Stahl contends that he is entitled to recover interest on his fee at the rate of 5% per annum from September 10, 1942, the date of the filing of the final account. He relies on Code of Practice, Article 989, and Whitney v. City of New. Orleans, 5 Cir., 54 F. 614; no cases decided by this court are cited. The mentioned article reads:
 

 “As the creditors of estates administered by curators or testamentary executors or •administrators can only obtain payment after certain delays, interest shall be allowed on their debts, if the estate be sufficient, from the death of the debtor, if they were due at that time, or from the date when they became due, if it were after that event, although no judicial demand may have been made.”
 

 Assuming for the purpose of argument, but without deciding, that Stahl’s claim is a debt within the contemplation of that quoted codal provision, interest thereon is recoverable only from the date it becomes due. That claim has not yet matured, for the estate is still undergoing administration; hence the demand for interest must be disallowed.
 

 The cited Whitney case is inappropriate; it does not involve a fee for services rendered to a succession.
 

 For the reasons assigned, the judgment of the district court is amended by reducing the amount allowed Leopold Stahl, for legal services rendered as attorney for the executor, from $15,000 to $10,000; and, as amended, the judgment is affirmed.