In application for rehearing counsel for defendant complain that we assessed the penalties authorized by Act 310 of 1910 where an insurer arbitrarily refuses or delays settlement under a policy, and point to several cases in which it has been held that, when the refusal is based on the certificate and advice of a reputable licensed physician, it cannot be said to have been arbitrary or unreasonable.
Counsel further suggest that the penalty should not have been inflicted for the further reason that the amount found by us to be due under the policy was less than the amount claimed by plaintiff. They argue from this that there must have been reasonable doubt as to whether there was any liability at all and that, where there is such reasonable doubt, the refusal to make settlement cannot be said to have been arbitrary.
We did not ignore nor overlook the well-established rule that such a penalty should not be assessed against an insurer whose refusal has been based on the advice of a reputable licensed physician. But we found that there is also a well-established exception to the rule and that, under this exception, a showing that the company's refusal to make payment under a policy was based on a physician's report will not avail the insurer against whom the penalty is sought to be invoked if there was undue *Page 130 
delay on the part of the physician in making his examination, or undue delay on the part of the insurer in requesting the physician to do so.
Here plaintiff, Sanchez, was injured on June 15, 1937. He was treated for his injuries by Dr. Menendez, who was the physician not of the insurer, but of the employer, and he was later treated by Dr. Letten, his personal physician. Defendant company has offered in evidence two of the claim blanks which were filed with it by plaintiff. On one side of each of these blanks is a form to be filled in by the physician and, on the reverse, a form labeled "Inspection Report". On June 18, 1937, Dr. Menendez filled in the physician's report on the first of these claim blanks as follows:
"12. Describe injury." Ans. "Right lumbar sprain."
"13. Is there external evidence?" Ans. "No." "If so, what?" Ans. "Complaint."
"14. Is disability now total or partial?" Ans. "Total."
This claim blank, signed by Dr. Menendez as physician of the employer, was received by defendant company on June 21, 1937, and the claim was due on June 25, 1937. On the reverse side of this claim blank the form labeled "Inspection Report" was filled in by the superintendent of the defendant company, who stated that he had made an investigation of plaintiff's claim on June 24, 1937. Some of his answers to questions appearing on this side of the form we now set forth:
"9. Describe injury." Ans. "Injured side."
* * *
"11. Is there external evidence?" Ans. "Yes." "If so, what?" Ans. "Slight abrasion and back under strap bandage".
The other claim blank which defendant has offered in evidence was filled in by Dr. Letten on June 25, 1937, one day after defendant had made its investigation of plaintiff's claim and had advised its rejection on the ground that he was not totally disabled. This blank, according to notation, was received by defendant company on June 26, 1937.
It is true that Dr. Menendez, the physician of the employer, discharged Sanchez on June 21, 1937, and advised that he could return to work. However, the fact is that Sanchez did not return and, according to Dr. Letten, his personal physician, he was unable to return to work that day. Defendant received knowledge of this on June 26, 1937, when it received the second claim blank. It is true that both Dr. Menendez and Dr. Letten stated in the claim blanks that there was no external evidence of the accident, but it is obvious that they did not understand just what was meant by "external evidence", for, on the trial, Dr. Menendez, when asked: "Did you find any external evidence of a right lumbar sprain?" answered: "No, he didn't have any external evidence, but he had definite muscular rigidity on the right side."
So that we find, as a matter of fact, that Dr. Menendez, who examined the plaintiff shortly after the accident, did find external evidence, as we stated in our original opinion, and we find, also, that the superintendent who inspected him did find external evidence. And yet, it was not until July 29, 1937 — more than thirty days later — that Dr. Butker, the physician of defendant company, examined plaintiff. We think that this examination, considering all of the earlier reports and circumstances, came too late to permit it to be of assistance to defendant in avoiding the penalty. In Phillips v. Mutual Life Insurance Company of New York, La.App., 155 So. 487, it was held that an insurance company is not relieved of liability for the statutory penalty for failure to pay a claim, where its investigation and report were not made until more than three months after the filing of a legal claim.
Defendant also complains that the penalty should not be assessed because the allowance of less than plaintiff claimed indicates that there was no certainty that any amount was due.
In Dale v. Washington National Insurance Company, 179 La. 928,155 So. 438, the Supreme Court found that "plaintiff, in his petition, greatly exaggerated his injuries" and that his disability was not continuous, but was only temporary, and the Court held that plaintiff was entitled to recover disability benefits for a period of only three months and nineteen days. The defendant denied that any disability was due under its policy. The Court held that the defense was not well founded and that defendant's failure to pay the amount due under the policy was not based on just and reasonable grounds. The penalty provided by the statute was allowed. *Page 131 
We think, therefore, that neither of the reasons suggested by defendant for avoidance of the penalty is well founded.
The rehearing is refused.
Rehearing refused.