83 So.2d 463 (1955)
Mrs. Martha M. PHELPS, Plaintiff-Appellant,
v.
SOUTHERN NATIONAL INSURANCE COMPANY, Defendant-Appellant.
No. 8299.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1955.
Rehearing Denied November 29, 1955.
Writ of Certiorari Denied January 16, 1956.
*464 Phillip Goode, Robert K. Mayo, Shreveport, for plaintiff-appellant.
Eugene J. Coen, Shreveport, for defendant-appellant.
HARDY, Judge.
This is an action by plaintiff for the recovery of certain hospitalization and surgical benefits under the terms of a policy issued by defendant insurance company, together with penalties and attorney's fees under the provisions of LSA-R.S. 22:657. From a judgment in favor of plaintiff in the principal sum of $318.25 both parties have perfected suspensive and devolutive appeals to this court.
The uncontroverted facts are that the policy sued upon was issued to plaintiff by the defendant on September 10, 1953. On March 11, 1954 plaintiff was hospitalized in the Schumpert Memorial Sanitarium in Shreveport and on the following day, March 12th, Dr. S. W. Boyce performed a cholecystectomy, the removal of the gall bladder by operative procedure, which disclosed the presence of numerous gallstones, estimated by the operating surgeon as probably being fifteen in number and varying in size "from a match head up to a lentil"; proofs of loss were promptly filled out and mailed to the defendant insurer; by letter of May 11, 1954 defendant refused payment of plaintiff's claim and tendered a refund voucher in the amount of $38.75, representing policy premiums paid by plaintiff, which voucher was not negotiated by plaintiff and was filed in evidence upon trial of this case.
Defendant resists plaintiff's demands on two grounds, both predicated upon its interpretation of policy provisions; first, that hospital confinement must result from an illness which has been contracted and which commenced more than fifteen days following the effective date of the policy in order to entitle the insured to indemnity; and, second, that indemnification for a surgical operation is payable only in instances when the sickness or disease necessitating such operation has been contracted or has commenced more than 90 days after the effective date of the policy.
In support of the above contentions defendant relies upon two provisions of the policy contract, the first of which is found in the insuring clause reading as follows:
"This policy is issued in consideration of the application therefor, and the premiums paid in advance for the period as shown in the schedule above, and shall be in force and effect from 12 o'clock noon of the date hereof; against loss of life, limbs or sight, resulting from bodily injury sustained while this policy is in force, and the benefits provided herein for expense of hospital confinement, and such sickness or disease contracted and commencing more than 15 days after the issue date of the policy, or such losses incurred as the result of a surgical operation caused by sickness or disease contracted and commencing more than 90 days after the effective date of the policy, subject however, to all of the provisions and limitations contained herein, or indorsed hereon, or attached hereto."
The second policy provision which is material to the defense reads as follows:
"Indemnity payable under this policy resulting wholly or partly from tuberculosis, heart trouble, cancer, hernia, fibroid tumor, gallstone or gall bladder or any of the generative organs not common to both sex, or any organic functional disorder of the brain or nervous system shall be paid only if *465 such loss occurs after this policy has been maintained in continuous force for the six preceding months. * * *."
The defenses above noted involve the determination of questions of fact which must be resolved in the light of what we regard as the plain and unambiguous provisions of the policy as above noted. With respect to defendant's first contention we find nothing in the record which would even indicate that plaintiff-insured contracted any sickness or disease within the periods fixed. It is somewhat strenuously urged by counsel for defendant that the presence of gallstones in plaintiff's bladder, which fact was discovered after the removal of that organ by operative procedure, is proof of a preexisting sickness or disease. We cannot so hold for the testimony of all the medical experts reflects the opinion that the mere presence of gallstones within the gall bladder does not constitute a sickness or disease, and there is no evidence in the record before us which would serve to establish the existence of any sickness or disease resulting from the presence of gallstones.
We think the argument that indemnity is not payable under the policy because the operation resulted wholly or partly from gallstones or gall bladder affection which developed before the expiration of the six month period specified in the policy is even more unfounded, if possible, than the first ground of defense. Reference to the clause is convincing on the point that the exclusion from payment of indemnity is effective only if the loss arose before the policy had been maintained in continuous force for the six preceding months. The uncontradicted facts of the instant case speak for themselves. The loss sustained by plaintiff occurred when she was hospitalized on March 11th preceding her operation on March 12th. The fact that March 11th was only one day beyond the six month period is entirely irrelevant for it matters not whether the loss occurred five minutes or five years after the policy had been maintained in effect for a continuous period of six months.
In our opinion the only serious question presented in the instant case relates to plaintiff's demands for statutory penalties and attorney's fees which were refused by judgment of the district court. Plaintiff's appeal was obviously designed to protect her right to insist upon the amendment of the judgment in this respect.
The demands for penalties and attorney's fees are zealously opposed on the premise that defendant had just and reasonable grounds for refusing payment of plaintiff's demands. Parenthetically we observe that there is no question as to the prompt filing of plaintiff's claims, nor is there any opposition interposed by defendant as to the form thereof.
Counsel for defendant cites well recognized and established authorities in support of the proposition that a penalty under LSA-R.S. 22:657 will not be inflicted where just and reasonable grounds exist in support of a refusal to pay. This proposition does not admit of argument since it is predicated upon the wording of the act itself, which provides that all claims shall be paid not more than thirty days from the date upon which written notice and proof of claim are furnished to the insurer "unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist."
In the instant case this defense is subject to serious question because it is evident from the record that defendant's investigation of plaintiff's claim was unduly delayed. The only witness as to the alleged investigation on behalf of the insurer was its claim adjuster, Mr. Joe A. Saxon, who on direct examination testified as follows:
"Q. After having received those claims just what did you do, what investigation, if any, did you make to determine if the company was liable or not on this particular policy? A. Well, we tried to get some further information and made an investigation.

*466 It showed that from all the evidence we had that the condition was not covered at that time. The policy was not old enough."
We have examined the transcript of the testimony of this witness in the effort to determine the character and nature of the information and investigation upon which he relied as justifying the refusal of plaintiff's claim. The witness was most unsatisfactory, vague and evasive. We quote below a pertinent extract from the testimony of the witness on cross-examination:
"Q. And, the information disclosed in these proofs of loss is sufficient upon which to either accept or reject the claim, is that correct? A. Well, we had other information we developed from private sources. We don't tell where that comes from.
"The Court: If you want to avoid the penalty in this case you better give a good reason why this claim was not paid, because you have not given a good one so far in my opinion. A. Judge, Your Honor, all our experience and all our medical records state, and the doctors here testified, that it takes probably years to develop gallstones, and since they were partly due to that they were removed, and our feeling is that they had a direct bearing on this acute gall bladder condition.
"By the Court:
"Q. You heard Dr. Boyce testify that in his opinion this acute infection was caused from the backing up of the bile, I believe, or from the bowel, and that the gallstones had nothing to do with it. Did you make any effort to make any investigation about this operation to find out whether the gallstones had anything to do with it or not or did you base your opinion on the fact that this lady had gallstones, and for that reason you don't owe anything under this policy? A. Well, since it was evident that it took these gallstones longer than that period to develop, and they were not connected.
"Q. Just so they found gallstones you said you don't owe it? That was the basis of your refusing to pay the claim? A. Yes, sir.
"The Court: All right.
"By Mr. Mayo:
"Q. Now, Mr. Saxon, did you write Mrs. Phelps a letter or how did you reject her demands? A. I think you have a letter there.
"Q. What did you tell her in that letter, what did you give her as the reason? We have gone over several alternatives, the three months rule and the six months rule, what did you explain to her as to why you were rejecting her demands and what did you give as your reasons? A. Well, there has been so much correspondence I couldn't say just what was in the letter, but you probably have the letter.
"Q. Isn't it true you told her that your company took the position that the gallstones had formed before the policy was issued, and that was why you were denying the recovery? A. It is possible that was what it was.
"By the Court:
"Q. Did you ever talk to Dr. Boyce about this claim? A. No sir.
"Q. Did you ever write him and ask him for any information about it? A. I think we sent another blank. Our inspector probably contacted him."
We think the conclusion is inescapable that defendant had made no adequate investigation of plaintiff's claim at the time it refused payment thereof by letter of May 11, 1954, which was two months to the day after plaintiff's confinement in the hospital, which resulted in the loss sustained under the terms of the policy. The only medical witness tendered by defendant, on trial, who made any examination of plaintiff was Dr. Paul D. Abramson, a distinguished surgeon of Shreveport, whose only examination of plaintiff was made on July 29, 1954, more than sixty *467 days after plaintiff had filed suit. The only other medical witness on behalf of defendant was Dr. Jason C. Sanders, who was examined as an expert and who, according to his testimony, had never so much as seen the plaintiff until the day of trial.
Defendant's negligence in pursuing an investigation and further evidence of its reliance upon an arbitrary determination of plaintiff's claim is found in the fact that its adjuster never at any time considered it necessary to talk to Dr. Boyce, the surgeon who performed the operation upon plaintiff, nor did he write him to inquire for any information.
These facts, that is, the failure of defendant's claim adjuster to disclose the details of his so-called investigation of plaintiff's claims; the fact that defendant had not pursued an investigation from a medical standpoint directly bearing upon the facts of plaintiff's case until months after the origin of the loss, clearly indicate an inexcusable delay which, in the absence of other facts of a most convincing nature, in itself serves to attach liability for penalties under the statute. This conclusion is sustained by any number of authorities.
In Campasi v. Mutual Benefit Health & Accident Ass'n, 207 La. 758, 22 So.2d 55, 57, the opinion stated:
"Not only did the company fail to make payment within the thirty days required by Act 310 of 1910, but, during the remaining 15 months of the lifetime of the assured, the company failed to make any investigation or attempt to ascertain whether the disability of the assured, who was for most of the time confined in a hospital, was due to a disease of an organ common or not commonto both sexes; for if the company had made any such investigation the fact would have been disclosed that the disability of the assured was due to a disease which might well have originated in the omentum, an organ common to both sexes, * * *." (Emphasis supplied.)
From the opinion of Mr. Chief Justice Fournet in Bankson v. Mutual Ben. Health & Accident Ass'n, 208 La. 1008, 24 So.2d 59, 64, we quote:
"When it did deny liability, it did so without an investigation of any kind to justify the merits, if any, of its position.

"As hereinabove demonstrated, the defendant's contention that it was justified in making the special defense that plaintiff had answered falsely questions propounded to him in his application for the insurance because plaintiff's wife, in making out the proof of claim, answered one of the questions by stating he was an `Embalmer & Funeral Director' is untenable, for the slightest investigation on the part of the association would have apprised it of the exact nature of plaintiff's supervisory duties at the funeral home.
"Even had the basis for defendant's contentions that the disease antedated the effective date of the policy and that the disability of the plaintiff resulted from insanity been grounded in some reasonable premise, we think an investigation on the association's part would also have shown the true facts in these instances. If such investigation was made, the presumption is the results thereof were against the defendant for it not only failed to give the court the benefit of such findings, but also failed to call a single witness to the stand in support of such special defenses. Had the association seriously thought it was justified in refusing payment, certainly some effort would have been made to substantiate these defenses on the trial of the case other than mere resort to the cross-examination of plaintiff's witnesses. Of course the association was entitled to its hope that we might follow the holding in the Moss case, but, as was also pointed out in the Campasi case, `not at the expense of the assuredexcept upon just and reasonable grounds'." (Emphasis supplied.)
*468 In Sanchez v. National Life & Accident Ins. Co. of Nashville, Tenn., 1 So.2d 129, Judge Janvier of the Orleans Court of Appeal passed on a question identical with the one here involved in these words:

"We did not ignore nor overlook the well-established rule that such a penalty should not be assessed against an insurer whose refusal has been based on the advice of a reputable licensed physician. But we found that there is also a well-established exception to the rule and that, under this exception, a showing that the company's refusal to make payment under a policy was based on a physician's report will not avail the insurer against whom the penalty is sought to be invoked if there was undue delay on the part of the physician in making his examination, or undue delay on the part of the insurer in requesting the physician to do so." (Emphasis supplied.)
To the same effect is the observation of Mr. Justice Ponder in Nomey v. Pacific Mut. Life Ins. Co., 212 La. 820, 33 So.2d 531, 534, 1 A.L.R.2d 946:

"The trial judge imposed the statutory penalties on the ground, as reflected by the reasons he gave for his judgment, that the defendant made no showing whatsoever that any effort was made by it to ascertain the truthfulness of the plaintiff's claim from the time the claim was first made until the suit was filed, and for the further reason that the defendant continued to oppose the plaintiff's claim after having received the information of the plaintiff's condition * * *." (Emphasis supplied.)
Nor do we think defendant should escape liability for the penalty because in the instant case it misinterpreted both the cause of plaintiff's illness and the legal effect of its policy provisions. A defendant insurer must take the risk of its misinterpretations of its policy. Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409.
Defendant's erroneous conclusion to the effect that the mere existence of gallstones within plaintiff's bladder indicated the existence of a condition of sickness or disease over a period of months or years was one which could have been corrected upon the basis of any adequate investigation, and defendant's failure to establish any effort to make a thorough examination until long after the lapse of the thirty day period provided by the statute was a direct contravention of such statutory provision which unquestionably subjects defendant to the penalty provided.
In addition to the statutory penalty equivalent to an amount equal to the medical expenses recoverable, plaintiff prays for the allowance of the sum of $350 as attorney's fees, but this claim is not supported by any proof and it follows that the amount of the fees must be fixed by the court, which procedure is well established in our jurisprudence; Daigle v. Great American Indemnity Co., La.App., 70 So. 2d 697, and authorities cited therein.
In the instant case we think an award of $250 should be considered adequate compensation for the services of plaintiff's attorneys.
For the reasons assigned the judgment appealed from is amended by increasing the principal amount thereof to the sum of $636.50, together with an additional sum of $250 as attorney's fees, and as amended the judgment is affirmed at defendant's cost.