96 So.2d 527 (1957)
Clint B. CAIN, Plaintiff-Appellee,
v.
EMPLOYERS CASUALTY COMPANY, Defendant-Appellant.
No. 8699.
Court of Appeal of Louisiana, Second Circuit.
June 28, 1957.
Rehearing Denied July 25, 1957.
Writ of Certiorari Granted October 8, 1957.
*528 Simon & Carroll, Shreveport, for appellant.
Booth, Lockard, Jack & Pleasant, Shreveport, Bryne A. Bowman, Oklahoma City, Okl., for appellee.
AYRES, Judge.
By this action plaintiff seeks to recover of his employer's compensation insurer under the Workmen's Compensation Statute, LSA-R.S. 23:1021 et seq., the maximum statutory benefits provided for total and permanent disability, and under the Insurance Code, LSA-R.S. 22:658, penalties, including a reasonable attorneys' fee, less compensation of $450 paid prior to the institution of this suit and covering a period of fifteen weeks, for accidental injuries sustained April 16, 1956.
The facts as to plaintiff's employment, accidental injuries, and rate of compensation, as well as that defendant is the employer's compensation insurer, were admitted. It was contended, however, in defendant's answer that plaintiff sustained only a back sprain from which he had sufficiently recovered to return to work on August 2, 1956, and to that date it was alleged compensation had been paid. However, only two days prior to trial, plaintiff was examined for the first time at the instance of defendant or its counsel, and then by Dr. T. M. Oxford, an orthopedist, who on the following day made a report of his examination to defendant's counsel. The purport of the report was that plaintiff was suffering from a herniated disc of the lumbar region of the spine and was totally disabled. Accordingly, prior to trial, defendant conceded its liability for compensation as claimed by plaintiff and paid all compensation in arrears to the date of the trial. Defendant further agreed that payment of compensation would be continued during plaintiff's disability, but not, however, in excess of four hundred weeks from the date of the accident.
Defendant, through counsel, stated its position to the court:
"Until two days ago, it was believed by the defendant that there was a serious dispute as to the question of the alleged disability of Mr. Cain. On the basis of medical reports which were rendered on examinations made on Tuesday, the 26th of February, and which were received in my office, as attorney for the defendant, on yesterday, it appears that Mr. Cain is, at this time, totally disabled. We have, therefore, tendered to the plaintiff, and he has accepted, payment of compensation through this date, with an agreement that compensation will be paid in weekly payments of thirty dollars ($30.00) per week.
"* * * * * *
"The sole question, then, is the question of plaintiff's claims for penalties and attorneys' fees, in addition to his prayer and claim in his petition for a judgment for estimated future medical expenses. It is the position of the defendant that he is limited to one thousand dollars ($1,000.00) under the Act. He has alleged that there is a ten thousand dollar ($10,000.00) extra medical coverage in the policy of insurance.

*529 Our position, of course, is that except insofar as additional medical may be incurred and proved on the trial of the case, we are not liable in any amount above the one thousand dollars ($1,000.00) provided by the Workmen's Compensation Act."
The issues presented to the trial court were accordingly restricted to plaintiff's claims for penalties, including a reasonable attorneys' fee and for future medical expenses. After trial there was judgment in plaintiff's favor, awarding him compensation at Thirty ($30) Dollars per week during the period of his disability, however, not exceeding four hundred weeks from the date of his accidental injuries, less compensation paid for a period aggregating forty-five weeks, for penalties at the rate of twelve per cent (12%) on the thirty weeks compensation, which was in arrears immediately preceding the trial, or for the sum of $108, and for attorneys' fees of $2,000, as well as for legal interest on said sums, from judicial demand until paid, and all costs. The judgment further reserved unto plaintiff his right to sue for additional medical expenses not to exceed $3,360, subject to a credit of $485.45, as allowed in the aforesaid judgment.
The defendant applied for and obtained an appeal only from that portion of the judgment awarding penalties, including attorneys' fees. Plaintiff has answered the appeal and prayed for a reservation of his rights to sue for future medical expenses limited only to the extent of $10,000, as provided in the policy of insurance, less the amount allowed in the aforesaid judgment.
The issues for determination on this appeal are: (1) Whether the action of the defendant in discontinuing the weekly payments of compensation on August 2, 1956, was so arbitrary, capricious or without probable cause as to justify the imposition of penalties, including a reasonable attorneys' fee, and (2) Whether the award of $2,000 for attorneys' fees is reasonable in the event it is held that the facts justify the imposition of penalties against the defendant; and (3) Whether the right should be reserved to plaintiff in the judgment rendered to sue for future medical benefits and expenses in excess of the then statutory limit of $1,000.
Plaintiff's claims for penalties for defendant's alleged arbitrary refusal to pay compensation after August 2, 1956, are predicated upon the provisions of the Insurance Code, LSA-R.S. 22:658, the pertinent provisions of which, read as follows:
"All insurers issuing any type of contract other than those specified in R. S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss. * * *"
For a proper understanding of the primary question to be resolved, a resume of the facts appears necessary. Immediately following plaintiff's injuries defendant's tool pusher, plaintiff's foreman or superior, carried plaintiff to the State Line Clinic at Waskom, Texas, where he was hospitalized by Dr. T. R. Fowler over a period of three days. Plaintiff's then returned to his home in Oklahomo, near Gainesville, Texas, where April 22, 1956, on his own volition, he secured the services of Dr. William F. Powell to treat him for his injuries. Dr. Powell caused plaintiff to be hospitalized and placed him in traction until April 26, 1956, *530 after which treatments were continued as an out-patient. In a first report to defendant, dated May 12, 1956, and received by it two days later, Dr. Powell stated:
"The above man was injured April 22, 1956, when he slipped on a piece of two inch water pipe and fell some eight feet off a truck bed. He was seen initially at the Medical and Surgical Hospital where he was given emergency treatment and hospitalized for a period of five days.
"Since being dismissed from the hospital, he has received daily ultrasonic massage to his lumbar area. When seen May 7, 1956, he was doing well and was continued on Telegesios.
"Diagnosis: Acute low back strain.
"This man will need medical care and observation of approximately four to six weeks."
In a second report on June 15, 1956, the doctor again wrote defendant:
"I am writing regarding the above patient who was injured while working as a trucker in Louisiana. He jumped some ten feet or fell off of a truck bed and in so landing twisted his back. This resulted in low back pain, and he was first seen April 22, 1956, at the Medical and Surgical Hospital, where he was hardly able to walk. He was found to have an acute lumbo-sacral sprain. Physical examination revealed that the patient was not able to bend more than ten degrees in any direction. He also had marked muscle spasm in the lumbo-sacral muscles bilaterally. There was tenderness over L4 and 5, and straight leg raising was positive at about fifty degrees bilaterally. The patient was hospitalized from April 22, 1956, to April 26, 1956, at which time he was given relief and traction.
"He was seen in the clinic first on April 27, 1956, and given a series of ultrasonic therapy. On 5-15-56, he was started on Williams exercises and later on diathermy. He was told on 6-8-56, that he would be given one more week of rest and Williams exercises, after which time he would be evaluated, and it is hoped that he will be able to return to work at the end of this time. He should have no permanent disability, but will have a partial disability of some twenty-five per cent for the next three months in that he will be unable to do any heavy lifting which might be required in his occupation as a trucker." (Emphasis supplied).
The doctor made a third report to defendant on July 16, 1956, after having again, only three days before, examined plaintiff. There the doctor stated:
"Mr. Clint B. Cain reported to my office July 13, 1956, and he was still complaining of some pain. Physical examination revealed no limit of motion, however. He was told to continue his present routine of treatment.

"He was told that he could return to light work and to return to this office for a check in two weeks." (Emphasis supplied).
It was upon the basis of this last report, together with an alleged telephone conversation with the doctor, that defendant relies for justification of its action in stopping plaintiff's compensation. The letter does not support the position taken by defendant. Plaintiff had been merely told, according to the report, that he could return to light work but that he should report for a check-up in two weeks. In his deposition, the doctor explained that when he said plaintiff could return to light work, he meant that plaintiff could not return to heavy work and that had a representative of the defendant called upon him, by telephone or otherwise, as claimed by its adjuster and as to which the doctor had no independent recollection, he would have so advised defendant or its representative. The doctor *531 testified that plaintiff on July 16, 1956, was physically unable to do heavy oil field work such as he was doing at the time of his injury. In fact, as late as October 26, 1956, his opinion was that plaintiff had a 25% disability. Moreover, the claims adjuster for defendant admits in his testimony that Dr. Powell told him in a telephone conversation on August 2, 1956, that plaintiff was still coming to his office for treatment and that plaintiff contended he was unable to do even light work. When plaintiff was advised that he might do light work he endeavored to do so; he tried without success to do farm work such as hoeing, and sought re-employment with his employer, but was refused, notwithstanding his counsel's most urgent and earnest pleadings that he be given light work.
The inter-office communications of defendant on and after July 12, 1956, reveal a scheme to return plaintiff to work under the mistaken belief that regardless of his injuries his claim for compensation would thereby be extinguished. It was there advised:
"This would be an excellent method of disposing of this claim if it can be arranged to have him return to work for the insured on the same job at the same rate of pay.
* * * * * *
"We hope that in this case the claimant will be able to return to work for our insured at the same rate of pay and, therefore, he would not be entitled to any settlement."
The defendant, however, made no independent effort to determine for itself plaintiff's true condition and the extent of his disability. No opinion or report was ever requested from Dr. Fowler to whom plaintiff was carried by the employer's foreman immediately following the accident. Neither did defendant have plaintiff examined by any doctor of its choice until just prior to trial. Accordingly, when defendant stopped plaintiff's compensation payments, and refused to make further payments, it was not in possession of information warranting the position taken by it. Moreover, the payments were discontinued without the making of an investigation of any kind or character to justify the merits of its position. Failure in this respect evidences lack of good faith and warrants the imposition of penalties. Campasi v. Mutual Benefit Health & Accident Association, 1945, 207 La. 758, 22 So.2d 55; Bankson v. Mutual Benefit Health & Accident Association, 1945, 208 La. 1008, 24 So.2d 59; Phelps v. Southern National Insurance Company La.App., 1955, 83 So.2d 463.
Since the institution of this action defendant has continuously persisted in its refusal to make payments of compensation or to cause an examination to be made of plaintiff as to his physical condition to determine the true facts as to the nature and extent of plaintiff's injuries and disability until, as aforesaid, only two days before trial. This course of conduct was pursued notwithstanding plaintiff was examined by other doctors, including an orthopedist, copies of whose reports showing that plaintiff had suffered most grievous injuries, were furnished defendant.
One of these who examined plaintiff and made a report was Dr. Gene D. Caldwell, an orthopedist of Shreveport, Louisiana, who examined plaintiff on October 8, 1956, and, who, on the following day made his report, a copy of which was received by defendant October 15, 1956. In this report the doctor concluded:
"This patient presents positive objective findings of a protruded disc at the lower lumbar level. It is advisable that this man be hospitalized for a period of bed rest, pelvic traction, et cetera, followed by the application of a brace. The prognosis must remain guarded pending outcome of the conservative therapy."
However, on September 24, 1956, at his own request, plaintiff had been examined *532 by Dr. Don J. Wilson, a general practitioner of Marietta, Oklahoma. Dr. Wilson diagnosed plaintiff's condition as a severe sacroiliac sprain with a possible ruptured disc. After receipt of a copy of Dr. Caldwell's report, Dr. Wilson placed plaintiff in the hospital and carried out Dr. Caldwell's recommendations as to treatment. Dr. Wilson referred plaintiff to Dr. O'Donoghue, an orthopedist of Oklahoma City, who examined plaintiff on October 30, 1956. Although plaintiff was referred to Dr. O'Donoghue by Dr. Wilson to have a brace fitted, Dr. O'Donoghue immediately reported to defendant the fact of and the result of his examination of plaintiff. In his conclusion, the doctor stated:
"This patient has complaint of his back which has some of the symptoms of nerve root pressure. However, these are not borne out by objective findings. * * * While it may be that he has some root irritation, this seems to be very low grade and I think he should be rehabilitated as soon as possible."
Notwithstanding that Dr. Powell had testified as aforesaid by deposition on December 17, 1956, and that on the same date Dr. Wilson, likewise by deposition, concurred in Dr. Caldwell's diagnosis of a protruding disc. The defendant persisted in its refusal to recognize plaintiff's rights to compensation or to make any independent investigation concerning the same. From the facts thus established, it could not be but concluded that defendant's failure to continue the weekly compensation payments was in bad faith. Under similar facts in the case of Nomey v. Pacific Mutual Life Insurance Company, 1948, 212 La. 820, 33 So.2d 531, 534, 1 A.L.R.2d 946, the Supreme Court stated:
"The trial judge imposed the statutory penalties on the ground, as reflected by the reasons he gave for his judgment, that the defendant made no showing whatsoever that any effort was made by it to ascertain the truthfulness of the plaintiff's claim from the time the claim was first made until the suit was filed, and for the further reason that the defendant continued to oppose the plaintiff's claim after having received the information of the plaintiff's condition from Dr. Riggs, who had examined the plaintiff at the defendant's request. * * *"
Accordingly, an award of penalties, including reasonable attorney's fee, was affirmed. To the same effect and for similar reasons, is the holding of this court in Phelps v. Southern National Insurance Company, supra.
While, as we have stated, there was no basis for any justification for the discontinuance of plaintiff's compensation payments conceding for the purpose that Dr. Powell's reports correctly reflected his opinion and diagnosis of plaintiff's injuries and disabilities, contemporaneous and subsequent events of which the defendant had full knowledge, preclude defendant from a good faith reliance upon such reports. The record discloses a most flagrant violation of the time honored principles governing the relationship normally existing between a physician and his patient. According to Dr. Powell's own testimony he treated plaintiff from start to finish solely and exclusively at plaintiff's request and not at the instance of defendant insurer. To quote the doctor, his first and only loyalty was to his patient, the plaintiff. Yet the doctor, without permission from his patient, addressed and mailed every report he ever wrote directly to the insurance company, and, although he had in his possession a written request from one of plaintiff's counsel, authorized in writing by the plaintiff himself, the doctor refused to furnish either his patient or his patient's attorney with a report or even a copy of the unauthorized reports he had sent to the insurance company unless he could first obtain the insurance company's permission. The doctor sought permission but was refused. Therefore, *533 he declined to furnish the information requested.
In these reports, contrary to facts well established in the record, statements were made to the effect that plaintiff did not return to work, even lighter work, and that he, the doctor, had been unable to get plaintiff to return to work, thereby insinuating that plaintiff was a malingerer, and that plaintiff would be disabled with "compensationitis" as long as he was paid compensation. The record is replete with evidence that plaintiff was anxious and desirous of work, that he attempted lighter work on a farm and that he sought lighter work from his employer, but was refused. The aforesaid inter-office communication from L. R. Reese, Jr., District Claim Manager in the Shreveport office, to defendant's Sherman, Texas, office, of July 12, 1956, in view of the doctor's attitude toward his patient apparently explains the doctor's strenuous efforts in endeavoring to get plaintiff to return to work. The expressed purpose was to place the patient in such a position that he would not, in their opinion, be entitled to any settlement whatsoever.
This doctor's incredible explanation is that whenever the insurance company is paying the bills, he will not furnish his patient or his patient's attorneys with a report unless the insurance company gives him permission to do so. The record reveals, however, the doctor only had a hope at the time that his bills would be paid.
There is no question, in view of the reports of Drs. Caldwell and Oxford, eminent orthopedists and surgeons of Shreveport, but that Dr. Powell was incorrect in his diagnosis. From the doctor's evident betrayal of the doctor-patient relationship and from his obvious bias toward the defendant, it could only be concluded, at the most, that his testimony would be entitled to only scant consideration as it pertains to plaintiff's injuries and the extent and duration of his disability.
The conduct, practice and attitude of Dr. O'Donoghue is similar to that of plaintiff's Dr. Powell. Plaintiff's family doctor, Dr. Wilson of Marietta, Oklahoma, referred plaintiff to Dr. O'Donoghue for the purpose of having him fitted with a brace as recommended by Dr. Caldwell. The defendant insurer had nothing whatsoever to do with plaintiff going to Dr. O'Donoghue. Despite that fact and despite the fact that he had no authority from his patient to do so, this doctor on the very day he saw plaintiff, wrote the defendant a detailed report of the patient's narrative of the accident and of the doctor's physical examination, as well as of an X-ray examination. His conclusions were stated thusly:
"This patient has complaint of his back which has some of the symptoms of nerve root pressure. However, these are not borne out by objective findings. There is no atrophy, no reflex change. The sensory complaint is of stocking type rather than radicular. Straight leg raising is only very slightly restricted. X-ray remains negative. While it may be that he has some root irritation, this seems to be very low grade and I think he should be rehabilitated as soon as possible. I would suggest putting him in a corset, increasing his activities. I have, accordingly, prescribed a back support, put him on medication, and suggested that he step up his activities somewhat and return to work. I think he will have to be persistent at working since he undoubtedly will have some discomfort when he first returns to work no matter how long he puts it off. I see little reason to anticipate any partial permanent disability here."
The doctor's appraisal of plaintiff's physical condition was as erroneous as was that of Dr. Powell, which was conceded by defendant on the day of trial by the acceptance of Dr. Oxford's report. Again, the doctor had only a hope. He sent his *534 bills for examinations and back brace to the insurance company, payment of which was declined, but the defendant kept the doctor's report. Subsequently, the doctor recanted for a purpose; he sent plaintiff's counsel a copy of the report with a request that his bills be collected.
Taking into consideration all the facts and circumstances established by the record, as well as the devious maneuvers of defendant's agents and the connivance with plaintiff's doctors, it could only be concluded that defendant acted not only without probable cause, but in utter bad faith in discontinuing and in persisting in its refusal to renew plaintiff's compensation payments. Such conduct makes it mandatory under the statute that penalities be inflicted. Daigle v. Great American Indemnity Company, La.App.1954, 70 So.2d 697, 705; Crowell v. New Hampshire Fire Insurance Company, La.App. 1933, 147 So. 762, 767, and cases therein cited.
Where failure to pay compensation is arbitrary, a penalty of 12% of the amount due an employee is provided by the statute and was properly allowed here.
Next for consideration is the question of the fixing and the allowance of the attorneys' fees. Defendant contends that the allowance and fixing of the fees are governed by the Workman's Compensation Statute, LSA-R.S. 23:1141, wherein it is prescribed that the maximum fee shall in no case exceed $1,000. Plaintiff contends that the fee should be fixed and assessed as a penalty under the provisions of the Insurance Code, LSA-R.S. 22:658, as amended by Act 417 of 1952, which provides for the fixing of a reasonable attorneys' fee as a penalty for the prosecution and collection of losses under insurance contracts or for the collection of compensation due employees under the Workmen's Compensation Statute. Defendant cites in support of its contention the case of Gloston v. Coal Operators Casualty Company, La. App.1955, 85 So.2d 100, wherein our brethren of the First Circuit without a discussion of reasons therefor held that the provisions of the Compensation Statute applied, and reduced an attorney's fee to $1,000. We are not in accord with that ruling.
The penalty provision is found in the aforesaid provisions of the Insurance Code. This provision specifically applies to all forms of insurance, including workmen's compensation insurance. The provisions for the fixing of attorneys' fees in the compensation statute are, in our opinion, clearly intended as a protection to the employee, in that the statute limits recovery of attorneys' fees which are payable out of the employee's award. In the case of the incurring of penalties, including attorneys' fees, by the employer's insurer there is no necessity for the protection of the employee as such penalties are not payable out of his award. The statute providing for the infliction of penalties in certain cases, including workmen's compensation cases, prescribes no statutory maximum, other than that the attorneys' fee must be reasonable, that is, commensurate with and based on the reasonable value of the services rendered.
Defendant's contention, if followed to its logical conclusion, would lead to results clearly not intended by the statute. If the provisions of the Workmen's Compensation Statute limiting the weekly benefits are to be followed then an employee drawing compensation at the maximum rate would be deprived of the penalties under the Insurance Code because if he were awarded such penalties his compensation would increase beyond the maximum rate specified in the Compensation Statute. Obviously, that was not the intent of the statute. It is perfectly clear, therefore, that the penalty provisions of the Insurance Code are to apply notwithstanding the provisions of the Workmen's Compensation Act prescribe maximum benefits out of which a maximum attorneys' fee may be fixed.
*535 As a matter of equitable consideration is may be pointed out that over the years the maximum rate of the compensation has increased from $20 to $35 per week and the allowance for medical expenses has increased from $250 to $2,500, but no change has been effected in the maximum attorneys' fees.
There is no provision in the compensation statute requiring the employer's insurer to pay an attorneys' fee. The provision for such fees as penalties is contained in the Insurance Code where the only limitation is that the fee must be reasonable. Therefore, the fee should be fixed without regard to the provisions of the Workmen's Compensation Law, which is wholly and entirely inapplicable.
The application of the provisions of the Insurance Code, as to penalties including attorneys' fees, was recognized in Wright v. National Surety Corporation, 1952, 221 La. 486, 59 So.2d 695, where an attorney's fee was fixed and assessed against the employer's insurer pursuant to such statute. That the fee allowed was only $750 could in no wise be construed as a fixing under the provisions of the Workmen's Compensation Law, which as stated, makes no provision for the assessment of any attorney's fee against the employer's insurance carrier.
In a case of this kind it has been held there is no necessity for proof to be offered as to the value of the services of an attorney; that the court can best fix the fees. Daigle v. Great American Indemnity Company, supra; Crowell v. New Hampshire Fire Insurance Company, supra; Brooks v. Liverpool & London & Globe Insurance Company, La.App. 1932, 144 So. 788; Hunt v. Hill, 1916, 138 La. 583, 70 So. 522. The judge who tried the case and who was familiar with all the work done by plaintiff's attorneys, including all of its details, fixed and awarded a fee of $2,000. From a review of the record and our appreciation of the work done and the issues involved, the fee fixed is, in our opinion, reasonable and adequate and not excessive.
Next for consideration is the question as to the disposition of the attorneys' fee, that is, whether the attorneys or the client is entitled to the fee. A resolution of this question is implied in the statute itself. LSA-R.S. 22:658 provides in part:
"Failure to make such payment * * * shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss * * *." (Emphasis supplied.)
Indicative of the above phraseology is that the twelve per cent damages as penalties are payable to the plaintiff and the attorneys' fees to the attorneys. This construction clearly preserves the ethical prohibition against the division or splitting of fees and fulfills every requirement of justice, equity and ethics, particularly in view of the fact that the fee is fixed and determined upon the basis of the attorney's skill and the amount of work performed by him in the prosecution and collection of the total claim. Therefore, inasmuch as the fee is so predicated, its fixing and determination is in lieu of any fee as may have been contracted upon the statutory basis of twenty per cent of the recovery, not, however, exceeding the maximum of $1,000. The intent of the penalty provisions of the Insurance Code is primarily designed to benefit an unjustly treated employee, who would benefit by having his attorney's fees paid from penalties assessed against the insurance carrier instead of out of his compensation award. No one should unjustly enrich himself at the expense of another; therefore, the client would not be entitled to the amount of a fee earned by his attorneys; nor would an attorney be entitled *536 to an additional fee to be paid out of the compensation award.
The conclusion reached is that that portion of the penalties allowed as attorneys' fees is due to plaintiff's attorneys of record, but, in view of the privilege accorded attorneys for their professional fees on judgments obtained by them, as provided in LSA-R.S. 9:5001, the decree in plaintiff's favor for the recovery of such fee inures to their use and benefit.
Last, for consideration is the matter of the reservation of plaintiff's rights to bring an action for future medical expenses. Defendant contends that such reservation should not be for an amount exceeding the difference between the then statutory maximum of $1,000 and the $485.45 as allowed in the judgment appealed, whereas plaintiff contends the reservation should be limited only by the maximum provided in the employer's insurance contract of $10,000 less the amount awarded in the aforesaid judgment. Defendant further contends that, if the provisions of the insurance policy are held to apply, then that the reservation should not go beyond the allegations of plaintiff's petition and prayer wherein judgment for medical expenses was sought in the sum of $3,360. The policy provides for additional medical expenses with a limitation of $10,000 to any one person.
It is our opinion that the injured employee may recover medical expenses incurred by him in excess of the statutory maximum, in view of the aforesaid provisions in the compensation insurance policy and in view of the fact that such an endorsement constitutes a stipulation in favor of a third person. It was so held in Cummings v. Albert, La.App.1956, 86 So.2d 727. We are of the opinion, however, that plaintiff's rights to a reservation should be limited by the allegations of his pleadings and his prayer. There was no showing that reasonable future medical expenses would exceed the amount for which he prayed judgment.
Accordingly, for the reasons assigned, the judgment appealed is affirmed at appellant's cost.
Affirmed.