370 So.2d 186 (1979)
Mildred Rachal SMITH, Plaintiff-Appellee,
v.
RESERVE NATIONAL INSURANCE COMPANY, Defendant-Appellant.
No. 6937.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
Eric Harrington, Natchitoches, for defendant-appellant.
Davis & Simmons, Kenneth N. Simmons, Many, for plaintiff-appellee.
Before CULPEPPER, CUTRER and STOKER, JJ.
CUTRER, Judge.
This is a suit by Mildred Smith to recover expenditures incurred for hospitalization and other medical expenses in conformity *187 with the provisions of four (4) hospitalization insurance policies issued to the plaintiff by defendant, Reserve National Life Insurance Company. Plaintiff also requested penalties and attorney fees for the unreasonable refusal to pay such expenses.
From a judgment awarding the plaintiff the sum of $3,033.15, plus a like amount as a penalty, and $2,500.00 attorney fees, the defendant appeals. Plaintiff answered the appeal requesting an increase of attorney fees.
The undisputed facts are that the defendant issued the four hospitalization policies to plaintiff, three of which had effective dates of May 22, 1975 and one had an effective date of July 8, 1975. Mrs. Smith was admitted to the DeSoto General Hospital in Mansfield, Louisiana, on March 30, 1977, complaining of fever and abdominal pain. Dr. Jack Grindle concluded that Mrs. Smith was suffering from an inflammation of the gallbladder. Dr. Grindle then performed a cholecystectomy, the removal of the gallbladder. The procedure disclosed the presence of gallstones. Mrs. Smith's claim for the hospital and medical expenses were denied by defendant on the ground that the "sickness or disease" for which Mrs. Smith was operated upon predated the issuance of the policy.
The issues presented on appeal are (1) whether the plaintiff had a pre-existing illness which would deny coverage under the terms of the policies; and (2) whether penalties and attorney fees should be awarded.
The defendant contends that under the definition of "sickness" in each policy, the plaintiff has no coverage, as the "sickness" for which she incurred expenses predated the policies.
The definition of "sickness" in two of the policies (P-4 and P-6) reads as follows:
"The term `sickness' as used in this policy means sickness or disease, . . . sustained by an Insured Person, which first manifests itself after the effective date of this policy, and which causes loss while this policy is in force. . . ."[1]
The trial court gave no reasons for judgment. By deciding the case in favor of the plaintiff, we can thus infer that the trial judge held as a fact that the "sickness" did not predate the effective dates of the policies. We shall examine the record to determine whether such conclusion was manifest error.
Mrs. Smith, a 64-year-old widow, testified that she had never had any gallbladder attacks prior to November of 1976 and the subsequent hospitalization of March 30, 1977. She stated that Dr. Jack Grindle had been her family physician since 1973. She did state that she was hospitalized in 1971 for arthritis. Again, in 1974 she was hospitalized for several days for "shingles."
The hospital records in evidence are not clear as to why Mrs. Smith was admitted to the hospital for two days in 1971. The records do reflect, however, that she was hospitalized for several days in 1974 for the treatment of "shingles."
Dr. John Greer, a radiologist, testified by deposition that he conducted X-ray examinations of Mrs. Smith during the hospitalization stays in 1971 and 1974 wherein he noted the possible existence of a gallstone. He could not say that he told Mrs. Smith of this finding. Dr. Greer felt that there is a good possibility that the gallstone indicated in the 1971 and 1974 X-rays continued to exist up until the time of the operation in 1977. This physician pointed out that the medical term for the existence of a gallstone is "cholelithiasis," whereas the medical term for an inflammation of the gallbladder *188 is termed "cholecystitis." He further stated that a gallbladder inflammation can be caused not only by the existence of a gallstone but also for other reasons.
Dr. Jack Grindle, the family physician for Mrs. Smith since 1973, testified that the first time he diagnosed any gallbladder trouble for Mrs. smith was in November of 1976. He treated Mrs. Smith as an outpatient at that time and later, March of 1977, he diagnosed Mrs. Smith's condition as "acute cholecystitis" (inflammation of the gallbladder). This attack resulted in the surgery previously discussed.
The question then arises as to whether the "sickness" for which Mrs. Smith was operated upon, acute cholecystitis (inflammation of the gallbladder), predated the effective dates of the policies.
The record is clear and counsel for defendant admitted on oral argument that Mrs. Smith's first manifestation of acute gallbladder inflammation came about in November 1976, which attack resulted in the hospitalization and gallbladder removal procedure of March 1977. The existence of a gallstone may have predated the policy, but such a condition was not a "sickness" within the definitions of the policies. The "sickness" herein (acute inflammation of the gallbladder) occurred or manifested itself for the first time and caused the loss (medical expenses) well after the effective dates of the policies.
In the case of Phelps v. Southern National Insurance Company, 83 So.2d 463 (La. App. 2nd Cir. 1955), the court was faced with a similar problem. In that case the plaintiff's gallbladder was removed. Gallstones were found as a result of the operation and the defendant contended that the presence of gallstones in plaintiff's gallbladder was proof of a preexisting "sickness or disease." The court stated that the medical evidence reflected that "the mere presence of gallstones within the gallbladder does not constitute a `sickness'." The court further held that the loss occurred when the plaintiff was hospitalized for the gallbladder operation and during which time the policy was in effect.
In the case at hand, we conclude that the sickness and loss occurred during the time the policies were in effect. The trial court correctly allowed recovery.
The second issue is whether the trial judge erred in awarding penalties and attorney fees.
Dr. Grindle testified that he mailed two letters to the insurance company, one being dated May 31, 1977 and the other August 15, 1977, stating that in his opinion Mrs. Smith was asymptomatic up until November of 1976 insofar as a gallbladder inflammation attack was concerned. By letter dated May 26, 1977, the claims manager of the defendant informed Mrs. Smith that they were denying her claims due to the fact that Mrs. Smith's medical problem predated the policy dates. No further investigation or testimony was presented by the defendant in this regard.
We find that the insurer did not have a reasonable basis for withholding benefits in this case. Although an insurer has a right to test its liability on an insurance contract and demand a judicial interpretation of its policy provisions, the company must do so at its own expense and not at the expense of the insured. Rushing v. American Income Insurance Company, 274 So.2d 458 (La.App. 3rd Cir. 1973); Phelps v. Southern National Insurance Company, supra.
The trial court was correct in awarding penalties and attorney fees but we conclude that the trial court erred in the amount of penalty awarded.
The trial court awarded penalties payable to the plaintiff in an amount of $3033.15 which is a sum equal to the total amount of medical and hospitalization expenses awarded. This is the penalty authorized by LSA-R.S. 22:657.[2] We conclude *189 that the award of penalties under this statute is error. The award of penalties should be made under the provisions of LSA-R.S. 22:658[3] which provides for a penalty of 12% on the total loss.
LSA-R.S. 22:657 applies only to "health and accident" insurance which is defined as follows in LSA-R.S. 22:6(2):
"Insurance shall be classified and defined as follows:
* * * * * *
"(2) Health and accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto."
An examination of the four policies reflects that they cannot be classified as "Health and Accident" policies. Three of the policies provide only benefits for hospital and medical care. In the recent case of Tabb v. Louisiana Health Services and Indemnity Co., 361 So.2d 862 (La.1978), the Supreme Court held that a Blue Cross policy which provided only hospital and medical care was not a "Health and Accident" policy but was classified as "Miscellaneous" under the provisions of LSA-R.S. 22:6(14).[4]
The fourth policy herein, in addition to hospital and medical care, does contain one additional provision which affords coverage for loss of life, limb or sight. It may be argued that this additional coverage brings it within the definition of a "Health and Accident" policy. Such a contention, however, will not prevail as the coverage of this policy is primarily or principally for hospital and medical expenses. Since the policy has a principal coverage for hospital and medical expenses, the additional coverage does not convert it into a "Health and Accident" policy classification. This policy shall also be classified as "Miscellaneous." See Johnson v. State Farm Mutual Automobile Insurance Company, 342 So.2d 664 (La.1977); Pugh v. Travelers Indemnity Company, 166 So.2d 373 (La.App. 1st Cir. 1964); and MilesM *190 v. Central National Insurance Company of Omaha, 163 So.2d 838 (La.App. 4th Cir. 1964).
We therefore conclude that the four policies herein are "Miscellaneous" policies and thus penalties of 12% shall be awarded under the provisions of LSA-R.S. 22:658.
Plaintiff has answered the appeal and asked for an increase in attorney fees for the appeal. We conclude that an additional $500 should be awarded for the preparation of and the presentation of the appeal.
For these reasons, it is ordered that the judgment of the trial court is amended by awarding plaintiff 12% penalties on the amount of the loss plus $500 additional attorney fees, and as amended, the judgment of the trial court is affirmed. Defendant to pay all costs of this appeal.
AMENDED AND AFFIRMED.
NOTES
[1] The other two policies contain similar definitions of "sickness" as follows:

P-3 "The term `sickness' . . . means a sickness or disease and its resulting pathology or related conditions, which is contracted and commences after the effective date hereof, and which causes loss while this policy is in force. . . ."
P-5 "The term `sickness' as used in this policy means sickness or disease, . . . sustained by an Insured Person, which is contracted and commences after the effective date of this policy, and which causes loss while this policy is in force. . . ."
[2] LSA-R.S. 22:657 provides as follows:

A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases.
B. All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the insurer within sixty days of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six percent per annum from date of receipt of due proof of death by the insurer until paid.
[3] LSA-R.S. 22:658 provides as follows:

All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.
[4] LSA-R.S. 22:6(14) reads as follows:

"(14) Miscellaneous. Any other kind of loss, damage, or liability properly the subject of insurance and not within any other kind or kinds of insurance as defined in this Section, if such insurance is not contrary to law or public policy."